59 So.2d 517 (1952)
THOMAS
v.
STATE.
Supreme Court of Florida, Special Division B.
June 13, 1952.
R.H. Merritt, Pensacola, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
MATHEWS, Justice.
The appellant was informed against for second degree murder growing out of the killing of his wife by cutting and stabbing her with a knife. He was convicted of manslaughter and sentenced to 20 years imprisonment.
Appellant raises four questions:
(1) Was it prejudicial to admit in evidence photographs of the deceased lying in a pool of blood when said photographs are not necessary to throw any light on any material fact?
(2) Is it proper for a hired special prosecutor to take over the lead as was done in this case?
(3) Was it prejudicial to the defendant for evidence of previous convictions of crime of a person of the same name without showing the defendant in such cases to be the defendant in this case?
(4) Was the evidence sufficient to sustain a conviction of manslaughter?
Photographs should be received in evidence with great caution. Those received in evidence in this case showed a hideous scene with a dead woman stretched on the sidewalk and blood running into the street. Every fact shown by the photographs was testified to and there was no contradiction. In addition to showing the pool of blood, the photographs exposed a knife near the hand of the dead woman clearer than the oral testimony. Showing the knife near the hand of the dead woman corroborated the testimony of the appellant. In view of our prior decision in Mardorff v. State, 143 Fla. 64, 196 So. 625, in which other cases are cited, we hold that it was not reversible error to admit the photographs in evidence. There is a limit, however, to admission of photographs which prove, or show, nothing more than a gory scene.
The first and second questions will be considered together because the discussion of the third question shows to some extent *518 the lead taken over by the special prosecutor and his over-zealousness. It appeared that a practicing attorney was specially employed by the deceased's daughter to assist in the prosecution of the case. The County Solicitor was not present but the Assistant County Solicitor, Hopkins, was present. The Assistant County Solicitor conducted the examination of witnesses up to a certain point. When Dorothy Bland, the daughter of the deceased, who had employed the special attorney, took the stand, she was examined by the special prosecutor and he also cross-examined the appellant. During the examination of Dorothy Bland the following proceedings took place:
"Mr. Merritt: I would like to ask the State if Mr. Coe has taken over the lead.
"Mr. Coe: I will take the lead as I please with the permission of the Court.
"Mr. Merritt: I would like to have that in the record `as he pleases with the permission of the Court'. Mr. Coe, the special prosecutor, takes over the lead of the case in his words, `as he pleases' and I object to it.
"The Court: Objection will be overruled; exception noted."
Thereafter the over-zealousness of the special prosecutor was shown by the following proceedings while Dorothy Bland was on the stand:
"Q. Dorothy, Mr. Merritt has asked you some questions about your mother's house, I believe that house was being bought in your mother and your step-father's name, is that correct? A. Yes, sir.
"Q. So that if he killed her he would inherit it normally? A. Yes."
Objection was promptly made and sustained and the Court advised the jury that the question and answer was stricken from the record and they must disregard it. Although the Court correctly instructed the jury, the thought had been implanted in their minds by the question that by killing his wife the appellant would receive the home by eliciting a conclusion from the witness which she was not qualified to express.
When the appellant was on the stand, the special hired prosecutor asked the appellant if he had ever been convicted of crime, and he stated, "* * * about nineteen or twenty years ago." He then asked him how many times he had been convicted, and the witness answered, "I think once." (Italics supplied.) Then the following took place:
"Mr. Coe: All right, I will ask you if on May 8th, 1929, you were not convicted of assault and battery in this Court 
"Mr. Merritt: May it please the Court, I object to the counsel going into details.
"Mr. Coe: I am going to read the record.

"The Court: Objection overruled.
"Q. All right. On October  I haven't the date  1930, were you not convicted in this Court of the offense of petit larceny and given six months? A. No, sir, not me.

"Q. You were not convicted of the offense of petit larceny in October of 1930? A. No, sir.

"Mr. Merritt: May it please the Court, unless the counsel is in position to prove that this was the same Eugene Thomas, there must be some connection, some identification that this is the same Eugene Thomas. Then, I suggest that we have this examination in the absence of the Jury and eliminate those cases that don't apply to this Eugene Thomas.
"The Court: He can deny it if it is not he and that will end it, unless the State can prove to the contrary.
"Q. All right, Eugene Thomas, on October 21st, 1936, were you convicted of an aggravated assault with a knife upon one C.W. Chancellor and given one year in jail? A. No, sir.

"Q. On October 21st, 1936, 
"The Court: He said no.
"Q. Did you say `no'? A. Yes.

*519 "Q. On September 17th, 1939, were you not convicted of an aggravated assault upon one Claude Thompson with a knife? A. Claude Thomas?
"Q. Claude Thompson. A. No, sir.

"Q. On December 4th, 1944, were you not convicted in this Court of hit and run driving? A. Hit and run driving?
"Q. Hit and run driving in this Court on December 4th, 1944? A. You have got me wrong there.
"Q. Did you know a white man named C.W. Chancellor, Thomas? A. Not by that name.
"Q. Do you know a man named Anderson Meadows  Theodore Meadows? A. Theodore Meadows.
"Q. Theodore Meadows? A. Yes, sir.
"Q. I will ask you whether or not to refresh your memory about this Chancellor proceeding, a warrant was issued for you on June 26th, 1936, by Theodore Meadows charging that you assaulted Theodore Meadows and one G.W. Chancellor 
"The Court: The question is though whether or not he was convicted of assaulting Chancellor 
"Mr. Coe: That is correct, Your Honor.
"Q. And you deny that you were convicted of assaulting C.W. Chancellor? A. Yes, sir." (Italics supplied.)
Although the record does not disclose that the trial degenerated into a private prosecution, or that the administration of the criminal law was made a vehicle for oppression for the gratification of malice, it does show an over-zealousness on the part of the private prosecutor which we cannot approve.
"`It is proper, however, for the state attorney, when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel; and other members of the bar are not incompetent to be engaged for such assistance, and taking part in the trial, by reason of being retained and paid by private persons. When such assistants to the state attorney are employed in a case, the state attorney should always remain present at the trial, and see that a public prosecution does not degenerate into a private prosecution, and that the administration of the criminal law is not made a vehicle of oppression, for the gratification of private malice, or the accomplishment of private gain or advantage.'" See Jerry v. State, 99 Fla. 1330, 128 So. 807, 808.
With reference to the cross-examination of the appellant concerning other crimes, the record shows that the special prosecutor said while interrogating the witness concerning other crimes: "I am going to read the record." He had papers ("the record") in his hand from which he read and which he exhibited to the jury. He asked the witness about numerous crimes with which the appellant had no connection. This took place in the presence of the jury. It requires no imagination to visualize this courtroom scene. This cross-examination was prejudicial and is reversible error.
Reversed with directions to set aside the judgment of conviction and sentence and to grant a new trial.
SEBRING, C.J., CHAPMAN, J., and TAYLOR, Associate Justice, concur.