STATE OF NORTH CAROLINA v. WILLIE DANIEL PILKINGTON

No. 65

(Filed 7 April 1981)

**1. Constitutional Law § 28; Criminal Law § 86.2— cross-examination of defend-ant — prior convictions — reference to criminal record of another person**

   In this prosecution for taking indecent liberties with a child under 16, defendant was not denied a fair trial in violation of due process because the prosecutor cross-examined him concerning convictions of driving under the influence and reckless driving based upon the record of another person who had the same first and last names as defendant where the prosecutor relied upon the "indexes to criminal actions" which were kept in the office of the clerk of superior court; the prosecutor did not act in bad faith but had sufficient information upon which to base her questions on cross-examination; pursuant to pretrial discovery, defendant had notice for at least seven weeks prior to the trial that the State had criminal records indicating that a person with the same name as defendant was under a suspended sentence as a result of a plea of guilty to a charge of reckless driving which had been reduced from an original charge of driving under the influence; and neither defendant nor defense counsel attempted, either prior to or at the trial, to correct the prosecutor's erroneous reliance on the records of another person.

**2. Criminal Law § 86.2— cross-examination of defendant about prior convictions**

   The Supreme Court will adhere to the existing rule governing cross-examination of a defendant as to prior convictions.

   Justice EXUM dissenting.

   Justice CARLTON joins in the dissent.

ON discretionary review to review the decision of the Court of Appeals, reported pursuant to Rule 30(e), affirming defendant's conviction before *Godwin, J.*, at the 11 June 1979 Session of WAKE Superior Court and affirming the denial of defendant's motion for appropriate relief by *McLelland, J.*, on 9 November 1979.

Defendant was charged in a bill of indictment, proper in form, with taking and attempting to take indecent liberties with a child under sixteen.

At trial the State's evidence tended to show: On 8 October 1978, Roy E. Provost, aged 11, was fishing at a pond near his home. He testified that defendant came and sat next to him. Defendant began talking with the child and at one point asked him if he wanted to earn ten dollars by engaging in a homosexual act. Subse-

quent to this conversation, defendant grabbed Provost by the thigh, attempted to touch his private parts, and did so at least once. When he was able to get away, Provost ran home. On the way, he saw the license plate number of defendant's car and wrote it down when he returned to his home. The child's mother called the police, and, after they arrived, he accompanied them to the pond where he identified defendant's car. A policeman testified in corroboration of Roy's testimony. Defendant was arrested in the vicinity of the pond.

Defendant was the sole witness for the defense. He testified that he was visiting his sister who lived near the pond where the crime allegedly occurred. His sister was not at home when he arrived so he went to the pond to wait for her. Although he spoke to several children at the pond, he denied seeing or talking with Roy.

The jury found defendant guilty, and he was sentenced to four years in prison.

After filing a proper notice of appeal, defendant filed a motion for appropriate relief pursuant to G.S. 15A-1414. By this motion, defendant averred, among other things, that the assistant district attorney's inquiry into his alleged prior convictions was improper because the assistant district attorney based her questions on a criminal record which was not that of defendant. Judge McLelland denied defendant's motion, and defendant appealed.

A unanimous panel of the Court of Appeals upheld defendant's conviction and the denial of the motion for appropriate relief. The court, in an unpublished opinion by Chief Judge Morris, held that since the assistant district attorney had acted on information and in good faith, no error had been committed. We allowed defendant's petition for discretionary review on 7 October 1980.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and Rebecca R. Bevacqua, Assistant Attorney General, for the State.*

*Smith Moore Smith Schell & Hunter, by McNeil Smith and Stephen W. Earp and John Boddie for defendant.*

BRANCH, Chief Justice.

[1] By assignments of error four and five, defendant contends that the trial court erred in denying his motion for appropriate relief on grounds that he was denied a fair trial and deprived of his constitu-

State v. Pilkington

tional right to due process. Defendant maintains that the trial judge erred in permitting the prosecutor to cross-examine him concerning prior convictions based on an erroneous criminal record.

The portion of the cross-examination pertinent to the question here presented is as follows:

Q. I believe you testified on direct examination that you had lived in both Johnston County and Wake County before, is that correct?

A. Right.

Q. Okay. Have you ever lived at 304 Linden Avenue in Raleigh?

A. Where again?

Q. 304 Linden Avenue in Raleigh?

A. No.

Q. Ever lived at 814 Wake Forest Road in Raleigh?

A. No.

Q. Have you ever lived at 3714 Old Garner Road?

A. No.

Q. Could you tell me the places you have lived in Raleigh?

A. Dacian Road and Cameron Court Apartments. Then Hillsborough and Morgan.

Q. Okay. Did you ever live at 324 North Moore Street in Clayton, North Carolina?

A. Yes, I did.

Q. And that is in Johnston County, isn't it?

A. Right.

Q. Okay. And I believe that you testified on direct examination that you had been convicted in Johnston County of an offense, is that correct?

A. Yes.

State v. Pilkington

Q. And what offense was that offense that you had had
   and convicted?

A. Detaining an officer in the line of duty.

Q. Is that resisting, obstructing and delaying, is that the
   nature of the charge?

A. Repeat that again.

Q. Resisting, obstructing and delaying a law enforce-
   ment officer in the carrying out of his duties, is that
   the charge?

A. I wouldn't consider it so but I don't know. That is what
   is on the record.

Q. When was that conviction, sir?

A. I believe it was '74.

Q. And what, if anything, else besides that have you been
   convicted of or pled guilty to?

A. Nothing other than traffic violations.

Q. Okay. Isn't it, isn't it a fact that at the present time you
   are under a suspended sentence?

MR. COOK: Objection.

COURT: The objection is sustained. You are to give no
        consideration to an unanswered question. An
        answer to the question is evidence.

Q. Mr. Pilkington, have you ever been convicted of driv-
   ing under the influence?

A. No. I don't drink.

Q. And have you ever been convicted of ____

MR. COOK: Objection.

COURT: Overruled.

EXCEPTION.

DEFENDANT'S EXCEPTION NO. 8

State v. Pilkington

Q. Have you ever been convicted of reckless driving?

A. No.

In support of his motion for appropriate relief, defendant offered evidence tending to show that the above-quoted cross-examination concerning convictions of driving under the influence and reckless driving was based upon the record of another person named Willie Pilkington and that during the cross-examination, the prosecutor referred to and appeared to read from a document of some kind.

In opposition to the motion, the State offered the affidavit of Linda C. Mobley, the assistant district attorney assigned to the case. She averred that pursuant to a request for voluntary discovery she met defendant's attorney, Mr. Rodney Cook, on 22 March 1979 and without any court order orally provided him with information requested by him. She specifically noted that she had furnished information indicating that Willie Pilkington had been convicted of and pled guilty to several traffic offenses including a "reckless driving" charge which had been reduced from an original charge of driving under the influence. She further informed defense counsel that according to information furnished her, defendant was at that time under a suspended sentence as a result of his plea of guilty to the "reckless driving" charge. The affidavit also stated that prior to trial, and over his counsel's objection, defendant had personally talked with her and at no time before trial did Mr. Cook or defendant inform the prosecutor that the information furnished was incorrect. After trial she and Mr. Cook discussed the accuracy of the records, and further investigation disclosed that defendant and the Willie Pilkington charged with driving under the influence had different birthdays. This information did not appear on the disposition record in the clerk's office but only appeared on the original citations for the traffic offenses.

Defendant offered no evidence at the hearing to refute Ms. Mobley's affidavit.

At the conclusion of the hearing, Judge McLelland found facts consistent with those set out above and further concluded (1) that the State had "a reasonable basis for believing the charges and convictions were in fact those of defendant," (2) that the questions asked on cross-examination were asked in good faith and that defendant was not prejudiced by the questions, and (3) that defendant

State v. Pilkington

"received a fair trial on these matters." The court thereupon denied defendant's motion for appropriate relief for a new trial.

The rule in this jurisdiction is that, for purposes of impeachment, a witness, including a defendant in a criminal case, is subject to cross-examination concerning his convictions of crimes. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). Likewise, a defendant who elects to testify may be questioned concerning specific acts of criminal and degrading conduct. In both instances, the State is bound by the witness's answers and may not introduce extrinsic evidence to contradict them. Both rules are further subject to the proviso that the questions asked by the prosecutor must be based on information and must be asked in good faith. *State v. McLean*, 294 N.C. 623, 242 S.E. 2d 814 (1978).

In the instant case, defendant does not contend that the prosecutor acted in bad faith. Furthermore, it does not appear that the prosecutor lacked sufficient information upon which to base her questions on cross-examination. She initially relied upon the "indexes to criminal actions" which were records kept in the office of the Clerk of Superior Court of Wake County. The reliability of this information is attested by the fact that, when properly authenticated, such records are admissible as evidence of the facts recorded which are within the scope of the official's authority or duty. *See* 1 Stansbury's North Carolina Evidence § 153 (Brandis Rev. 1973).

The crux of defendant's argument is that despite the prosecutor's good faith, she used the *wrong* records to impeach him and thus defendant was denied a fair trial. In support of this contention, defendant relies on *Thomas v. State*, 59 So. 2d 517 (Fla., 1952), and *People v. Fishgold*, 189 Misc. 602, 71 N.Y.S. 2d 830 (1947).

In *Thomas* a private prosecutor questioned the defendant about crimes with which he had no connection. At one point in the cross-examination, the prosecutor stated, "I am going to read the record," and then proceeded to ask defendant about five separate convictions. During this examination, defendant's counsel objected and suggested that the private prosecutor might have the wrong record. The Florida Supreme Court reversed the conviction citing both overzealousness on the part of the private prosecutor and the prejudicial nature of the cross-examination.

In *Fishgold* an assistant district attorney cross-examined de-

fendant about crimes based on an erroneous record. The opinion indicates that the error was an "honest" one and based on a similarity between defendant's fingerprints and the fingerprints of the man whose record formed the basis of the cross-examination. Nevertheless a New York court found that the conviction was unfairly obtained when this error was combined with others at the trial, and the court granted a new trial.

The instant case is readily distinguishable from the cases cited by defendant in that here defendant had notice for at least seven weeks prior to trial that the State had access to the criminal records involved and would in all probability use those records as the basis for impeachment of defendant. Having received this information, neither defendant nor defense counsel attempted, either prior to or at trial, to correct the prosecutor's erroneous reliance on the records. A criminal defendant's past record is peculiarly within his own knowledge. In light of defendant's failure here to tell the prosecutor of her error once he was armed with knowledge of the erroneous records, we do not believe he should now be heard to allege that the use of these records was unfair. Our conclusion in this regard is buttressed by a number of federal cases which hold that one who has been convicted of a crime cannot later obtain relief when he knew that a witness testified falsely and the defendant did nothing to demonstrate falsity before or during trial. *See* Annot., Conviction on Testimony Known to Prosecution to Be Perjured as Denial of Due Process - Federal Cases, 2 L.Ed. 2d 1575, 1577(1)(b), Waiver 1958).

Further, the assistant district attorney asked once and only once whether defendant had been convicted of driving under the influence or reckless driving. Both questions were answered in the negative, and the assistant district attorney pursued the matter no further. We cannot perceive how prejudicial error could have resulted from this brief and innocuous cross-examination.

These assignments of error are overruled.

[2] Finally, defendant contends that we should reconsider and revise our rule governing cross-examinations as to prior convictions. We rejected a similar contention in the recent case of *State v. Ross*, 295 N.C. 488, 246 S.E. 2d 780 (1978). In that case, Justice Moore speaking for the Court stated:

This Court has declined similar requests to revise its rule regarding impeachment in *State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537 (1976); *State v. Foster, supra;* and *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972). In *State v. Foster, supra,* the Court said, in justification of the rule, "The rule is necessary to enable the State to sift the witness and impeach, if it can, the credibility of a defendant's self-serving testimony . . . ." Such continued support for the rule stems from the recognition that evidence of a witness's repeated violations of the law is relevant to the trustworthiness and credibility to be afforded him by the jury. Lack of trustworthiness may be evidenced by a witness's repeated and abiding contempt for the laws which he is legally and morally bound to obey . . . The probative value of evidence of prior crimes seems all the more relevant in the case of the witness who is also a defendant, for he, unlike a witness not on trial, has a direct interest in the outcome of the case, and there are therefore more substantial reasons for calling his credibility into account.

To be sure, a defendant with a prior record is put to a dilemma in deciding whether he should testify in his own defense. But the likelihood of undue prejudice accruing from the attempted impeachment of his testimony does not outweigh the court's substantial interest in arriving at the truth. Sufficient protection from undue prejudice is afforded by the court's instructions limiting consideration of the evidence of prior offenses to the matter of the defendant's credibility as a witness. Due process does not require more.

*Id.* at 493, 246 S.E. 2d at 784-85.

We elect to adhere to the established rule.

Under the facts and circumstances of this case, we hold that defendant received a fair trial, free from prejudicial error.

**Affirmed.**

Justice EXUM dissenting.

I respectfully dissent from the majority's decision that defendant received a fair trial. In my view he did not.

Despite the state's admission that it cross-examined defendant

State v. Pilkington

about prior criminal convictions using by mistake someone else's police record, the majority concludes this event was "innocuous" and one in which the defendant acquiesced. I believe both conclusions, on this record, to be incorrect.

The cross-examination at issue went as follows:

"Q. And what, if anything, else besides that have you been convicted of or pled guilty to?

A. Nothing other than traffic violations.

Q. Okay. Isn't it, isn't it a fact that at the present time you are under a suspended sentence?

MR. COOK: Objection.

COURT: The objection is sustained. You are to give no consideration to an unanswered question. An answer to the question is evidence.

Q. Mr. Pilkington, have you ever been convicted of driving under the influence?

A. No. I don't drink.

Q. And have you ever been convicted of —

MR. COOK: Objection.

COURT: Overruled.

EXCEPTION.

DEFENDANT'S EXCEPTION NO. 8

Q. Have you ever been convicted of reckless driving?

A. No.

Q. Could I call your attention, please —

MR. COOK: Objection.

COURT: The objection is sustained if it is intended to challenge the answer that he has given to you.

I do not drink at all. I am single. I have never been married. I am not a homosexual. I am not a bisexual. I have never participated in homosexual conduct. I did not

talk with Roy Provost at all at the lake on October 8, 1978.
I did not even see him there."

The prosecutor was reading from a document purporting to be the defendant's criminal record. In fact it was someone else's record whose name was "Willie Pilkington."

It stretches judicial imagination beyond credulity to conclude that the cross-examination was "innocuous." The jury's verdict depended on whether it believed eleven-year-old Roy Provost or the defendant. It could not believe one without disbelieving the other. The defense rested entirely on the credibility of defendant who, the record shows, was honorably discharged from the U.S. Army in 1975 and who had been at all times steadily and gainfully employed. Except for a conviction for "detaining a police officer in the line of duty" for which he was fined $30.00, his record was free from any serious blemish. Whatever tactic, therefore, that successfully impeached defendant's credibility can hardly, under the circumstances of this case, be called "innocuous."

In *United States v. Semensohn*, 421 F. 2d 1206 (2d Cir. 1970), the Court noted that "[t]he accused's credibility was the crucial issue in the case." It, therefore, awarded a new trial because the prosecutor was permitted to ask defendant on cross-examination whether he had been convicted of grand larceny when, in fact, defendant had previously pled guilty only to misdemeanor larceny. The Court said, *id.* at 1209:

> "Thus, it was crucial to Semensohn that he appear to be telling the truth, and the prosecutor's unwarranted assault upon his credibility clearly tended to undermine his only defense, that he was the innocent victim of the criminal enterprise of the Government's witnesses.
>
> "Under the circumstances we hold that the conviction below must be reversed."

It is, furthermore, difficult to conceive of a defendant, testifying in his own defense, being placed in a more unfair situation than this. His position was such that he was penalized more in the eyes of the jury for truthfully denying the convictions than if he had lied and admitted them. For with the prosecutor in possession of a document that purports to be a defendant's criminal record, a defendant who denies convictions apparently recorded on the document is, in the

State v. Pilkington

jury's eyes, a liar. His credibility is not impeached, it is destroyed. If, as here, his defense rests upon his credibility as a witness, his case is lost. On the other hand had defendant lied and admitted the convictions, his credibility before the jury would have been more intact. The jury might have reasoned, and defendant could have argued, that convictions of driving under the influence and reckless driving simply have no bearing on credibility in a case involving indecent liberties with a child.

Thus the procedure as used here by the state, albeit mistakenly, put a premium on lying. It made a truthful defendant *vis-a-vis* the prior convictions appear to be a liar in the eyes of the jury. The procedure was grossly unfair, prejudicial and, as the majority seems to concede, would ordinarily result in a new trial.

The majority declines, however, to award a new trial primarily upon its conclusion that defendant somehow acquiesced in being cross-examined on the basis of someone else's police record. Simply to state the proposition undermines its validity. In a case such as this where all depends on whom the jury believes, it is inconceivable that a defendant would knowingly and understandingly acquiesce in being cross-examined on the basis of someone else's police record.

A careful review of the record on appeal satisfies me that defendant did not acquiesce in this procedure. In fact, he objected twice to the complained of line of questioning only to have his first objection sustained and his second, made in apt time, overruled. Defendant never, prior to or during trial, saw the document which the state thought at trial was his police record. In the light most favorable to the state the record on appeal shows, at most, the following: On 5 March 1979 defendant, through counsel, filed a written discovery request in which he asked for, among other things, 'knowledge or memoranda of knowledge in the possession of the State concerning any previous charges against this defendant that are of the same nature or very similar nature as this charge." According to the prosecutor's affidavit at the hearing on defendant's motion for appropriate relief, she, after receiving defendant's counsel's 5 March letter, discussed orally with defendant's counsel defendant's criminal record. She said she informed Mr. Cook that 'my records indicated that Willie Pilkington had been convicted or pled guilty to several traffic offenses including a 'reckless driving' charge which had originally been 'DUI-Second Offense.' I further informed Mr. Cook that based on my records it was my belief that

the defendant was presently under a suspended sentence for his plea of guilty to 'reckless driving.'" According to her affidavit, however, it was not until after trial and "after the defendant had taken the stand and denied these charges" that "Mr. Cook and I discussed whether the defendant's record that I had provided was accurate." The state, of course, concedes that the document it used at trial was not, in fact, the police record of the defendant.

Defendant, therefore, had only been orally advised by the state that according to its records he had prior traffic convictions which included a DUI-Second Offense charge which had been reduced to reckless driving. Defendant admitted that he had "other . . . traffic convictions" on his record. Neither defendant, however, nor his counsel was ever shown before or at trial the actual document upon which the state relied in its cross-examination showing driving-under-influence and reckless driving convictions. Defendant, therefore, could not have acquiesced in the use of this document at trial.

It is, furthermore, the use of the document at trial which constitutes the gravamen of the unfair and prejudicial procedure used by the prosecution. Had the prosecution not cross-examined on the basis of a document purporting to be defendant's criminal record but, without using a document, simply asked defendant about the convictions, less damage would have been done. At least defendant's truthful denials would not have appeared as egregiously false in the eyes of the jury as, in fact, they did.

It was, therefore, the use of a document which purported to be but was not defendant's criminal record in connection with the cross-examination that constituted the denial in this case of a fair trial. Defendant, not having seen the document, could not have known whether it correctly or incorrectly purported to be his criminal record. He could not, therefore, have acquiesced in its use.

My position is supported by the authorites cited and distinguished in the majority opinion. In my view these cases are indistinguishable in principle from the present one. In *Thomas v. State*, 59 So. 2d 517 (Fla. 1952), defendant was awarded a new trial because the prosecutor cross-examined him about the convictions of someone else with the same name as defendant. In *People v. Fishgold*, 189 Misc. 602, 71 N.Y.S. 2d 830 (1947), a new trial was awarded because the criminal record of someone else was used to impeach a testifying defendant although the prosecutor was unaware of the error and used the record in good faith. In *Fishgold* the Court persua-

sively noted, 189 Misc. at 605, 71 N.Y.S. 2d at 833:

"While it is unquestionably true that the defendant denied the commission of the crimes imputed to him by these questions, nevertheless it would be absurd to suppose for one moment that the jury believed those denials. Every jury knows that the prosecuting officer occupies an office and possesses powers which enable him to obtain the criminal record of any individual, whether he be a witness or a party. By incorporating the Lukowski record into his questions, the District Attorney provided an occasion for the jury's disbelief of the defendant's denials — a disbelief which may well have affected the result."

Concluding then, that the cross-examination complained of was grossly unfair and prejudicial to defendant and that he did not acquiesce in it, I believe defendant was denied due process of law and for that reason is entitled to a new trial.

I cast my vote accordingly.

Justice CARLTON joins in this dissent.