STATE OF NORTH CAROLINA v. OGER CUNNINGHAM

No. 8326SC196

(Filed 1 May 1984)

1. **Criminal Law § 86.5— questioning concerning "another robbery"—good faith basis**

In a prosecution for armed robbery, a good faith basis existed for inquiry on cross-examination of the defendant about two other robberies where defense counsel stipulated there was a good faith basis for questioning defendant concerning one of the robberies, and where the record revealed that both offenses, as well as the offense for which defendant was being tried, occurred in the same geographic area between 9:30 and 11:30 p.m. on the same night; the defendant was identified as the perpetrator of the other two robberies; the perpetrator of the unstipulated robbery fit the general description of defendant; in all three robberies, the perpetrator first engaged the victims, who were working, in seemingly innocent conversation prior to pulling a gun on them; and, in the two robberies that were not the present prosecution, the perpetrator asked the victims about a job prior to robbing them.

**2. Criminal Law § 34.5— evidence of other offense—properly admitted to establish identity**

In a prosecution for armed robbery, the trial court did not err in allowing the State to introduce evidence during the rebuttal stage of the trial tending to show that defendant committed another robbery where identity of the defendant was in issue, and where there was great similarity between the robbery for which defendant was being tried and the other robbery.

Judge BECTON dissenting.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 10 September 1982 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 25 October 1983.

Defendant was charged in a proper bill of indictment with armed robbery. The jury returned a verdict of guilty as charged, and the court sentenced defendant to a prison term of 26 years, a term exceeding the presumptive sentence fixed by N.C. Gen. Stat. Sec. 14-87. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney David E. Broome, Jr., for the State.*

*Assistant Appellate Defender Nora B. Henry for defendant, appellant.*

HEDRICK, Judge.

[1] Defendant first contends that the trial court erred in permitting the State to cross-examine him about "another robbery," arguing that such questioning "exceeded the scope of permissible cross-examination and [was without] good faith basis."

It has long been the rule that where a defendant in a criminal case testifies in his own behalf, specific acts of misconduct may be brought out on cross-examination to impeach his testimony. [Citations omitted.] Such "cross-examination for the purpose of impeachment *is not limited to conviction of crimes.* Any act of the witness which tends to impeach his character may be inquired about or proven by cross-examination." *State v. Sims,* 213 N.C. 590, 197 S.E. 176 (1938). Although a defendant may not be asked if he has been accused, arrested or indicted for a particular crime, *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971), he may be asked if he in fact committed the crime.

*State v. Mack,* 282 N.C. 334, 341-42, 193 S.E. 2d 71, 76 (1972). The purpose of permitting disparaging questions concerning collateral matters relating to a defendant's criminal and degrading conduct is to allow the jury to consider the defendant's acts and conduct in weighing his or her credibility. The testifying defendant is not without some protection, however, since the questions must concern a specific, identifiable act of defendant, *State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981), and "the questions asked by the prosecutor must be based on information and must be asked in good faith." *State v. Pilkington,* 302 N.C. 505, 510, 276 S.E. 2d 389, 393, *cert. denied,* 454 U.S. 850 (1981). Defendant bears the burden of showing bad faith. *State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981).

The questioning alleged by defendant to have been improper appears in the transcript as follows:

Q. On the night of May 27, 1982, Mr. Cunningham, didn't you rob Michael Boyles at the Axton-Cross Company at 9:30 that evening on Service Road in Charlotte?

MR. RAWLS: OBJECTION.

THE COURT: OVERRULED.

MR. RAWLS: OBJECTION.

THE COURT: OVERRULED.

A. No, ma'am.

Q. Earlier that evening on that very same date, isn't it true, Mr. Cunningham, that you robbed William Galloway on North Graham Street in Charlotte by asking him first about a job and pulling a gun on him and later firing that gun in a struggle with him?

A. No, ma'am.

MR. RAWLS: OBJECTION.

THE COURT: OVERRULED.

Following this interchange, the court conducted a *voir dire* on the question of the State's good faith basis for inquiring about the Galloway robbery and found as a fact that such good faith basis existed. In regard to the Boyles robbery, the transcript contains

the following statement by defense counsel: "I will stipulate that in the Boyles case there is a good-faith basis for asking that question." We thus turn our attention to the narrow question whether defendant has sustained his burden of showing that the State did not act in good faith in asking defendant for impeachment purposes whether he robbed William Galloway.

The State's argument, which we find persuasive, is that a good faith basis for inquiry about the Galloway robbery may be found in its significant similarities to the Lazinsky robbery, with which defendant was charged. The record reveals that both offenses, as well as the Boyles robbery, occurred in the same geographic area between 9:30 and 11:30 p.m. on the same night; the defendant was identified as the perpetrator of the other two robberies; the perpetrator of the Galloway robbery fit the general description of defendant; in all three robberies, the perpetrator first engaged the victims, who were working, in seemingly innocent conversation prior to pulling a gun on them; and, in the Galloway and Lazinsky robberies, the perpetrator asked the victims about a job prior to robbing them. We think this information was ample to provide the State with a good faith basis for asking defendant whether he in fact committed the Galloway robbery. While, as Professor Brandis points out, "the unconvicted defendant [is unlikely to] admit the criminal acts charged," 1 Brandis on North Carolina Evidence Sec. 112, n. 61 (1982), this common sense observation in no way changes the well-established law of this State. The assignment of error is without merit.

[2] Defendant next contends that the court erred in allowing the State to introduce evidence during the rebuttal stage of the trial tending to show that defendant committed the Boyles robbery. Defendant argues that extrinsic evidence of other crimes is not admissible for impeachment purposes, and that such evidence was inadmissible for any other purpose.

It is true, as defendant states, that extrinsic evidence of prior bad acts is not admissible for the purpose of contradicting defendant's denial of such acts on cross-examination. *State v. Robinette*, 39 N.C. App. 622, 251 S.E. 2d 635 (1979). The rule regarding substantive use of prior offenses is equally clear, and is set out in *Brandis* as follows: "Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the

character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 Brandis on North Carolina Evidence Sec. 91 (1982). Because we believe the challenged evidence was properly admitted as tending to prove the disputed issue of identity, we find no error.

Our decision in this regard finds support in the decisions of our Supreme Court in *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981) and *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). In both *Freeman* and *Leggett* the Court upheld the admission of evidence tending to show that defendant therein committed another separate offense as bearing on identity in the case being tried, where identity was a disputed issue in the case. In our view, the similarities between the Boyles and Lazinsky robberies were even greater and more substantial than the similarities of the offenses in *Leggett*. In *Leggett*, each victim had identified the defendant as her assailant. Although the *Leggett* Court said nothing about any similarity of the descriptions of the assailant, the Court had this to say about the similarity of the manner in which the attacks occurred:

> The accounts by Miss Martin and Miss Mosely of the attacks against them revealed many similarities in the manner in which each of them was attacked, even though the attacks occurred one month apart. In each case the perpetrator came from a parking area in the vicinity of a church and grabbed a teenage woman ·on the public streets. In each case the perpetrator held a knife on the victim and proceeded to drag her to a secluded area from which he had more than one route of escape. The manner in which the perpetrator in each situation exposed himself to the young woman while holding a knife on her as well as the manner of his demands that they commit sexual acts with him were substantially the same.

*Id.* at 224, 287 S.E. 2d at 839. The Supreme Court's conclusion in *Leggett*—"If the evidence complained of tended to show that the attack on Miss Martin and another offense were committed by the same person, evidence that the defendant committed the other offense was admissible to identify him as Miss Martin's attacker,"

*id.* at 223, 287 S.E. 2d at 838—compels the same result in this case.

We summarily reject defendant's final arguments concerning his sentence. First, there has been no showing by defendant that the trial court considered the defendant's potential release date or elements of the offense for which defendant was charged in sentencing defendant. Second, our Supreme Court's decision in *State v. Thompson,* 309 N.C. 421, 307 S.E. 2d 156 (1983), rejects and disposes of defendant's contention that the State is obligated to prove defendant's non-indigency or representation by counsel at the time of prior convictions.

For the reasons stated above, we find

No error.

Judge ARNOLD concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

The two substantive issues on appeal are (1) whether the State had sufficient information of defendant's involvement in, and a good faith basis for asking defendant if he committed, a second armed robbery in Charlotte on the night in question; and (2) whether the State's rebuttal evidence—that defendant committed a third armed robbery in Charlotte on the night in question—was properly admitted, considering defendant's denial of the third armed robbery on cross-examination. Believing that both issues should be answered in the negative, I dissent.

I

Before discussing the substantive issues on appeal, a summary of the evidence regarding the three separate robberies that took place within the same geographical area of Charlotte between 9:30 and 11:30 p.m. on 27 May 1982 seems to be in order.

A. The Michael Boyles Robbery

Michael Boyles made a delivery of goods to the Axton-Cross Company in the Industrial Park on Service Street in Charlotte on

the night of 27 May 1982. As Boyles backed his truck to the dock between 9:00 and 9:30 p.m., a man approached and asked directions to North Tryon Street. Boyles told the man he would give him directions when he had finished backing up. Boyles testified:

> When I got up to the dock, I stopped, and I got ready to get out of the truck. When I stooped down on the ground with my back toward him, and he pulled the pistol out on me and told me to throw my wallet out on the ground.

After seeing the chrome revolver, Boyles threw his wallet on the ground and backed up. The man grabbed the wallet and ran away.

Boyles, five days later, picked out defendant's picture from a photographic array shown him by Officer S. L. Mullis. Boyles had previously described his assailant to police as being a 5'10", 170 pound black male with short to medium hair, approximately 23 to 26 years old, wearing a burgundy hat, a light blue tank top, dark blue shorts, and white tennis shoes.[1]

After this case (the Lazinsky case) was appealed, defendant was tried for robbing Michael Boyles. A Mecklenburg County jury found defendant not guilty of robbing Boyles.

B. The William Galloway Robbery

In the absence of the jury (no formal *voir dire* hearing was held), the assistant district attorney made the following statements to the trial court concerning the Galloway robbery.

> On the same date, May 27, a victim, William Galloway at 2731 North Graham Street, made a complaint at . . . 10:00 in the evening, that he had been robbed at gunpoint by a young black male, approximately five feet seven inches, weighing approximately 135 pounds. [I]n the course of the incident, he asked about a job at the place where Mr. Galloway was working, and that he had a handgun in his possession at the time, and that Mr. Galloway and the robber tussled, and the gun was fired.

---

1. At the time of the robberies, defendant, Oger Cunningham, was 21 years old, 5'9½" tall and weighed approximately 150 pounds.

Although the record does not reflect the exact distance, 2731 North Graham Street is in the same geographical area of Charlotte as the Axton-Cross Company.

Galloway described his assailant to the police as being a black male "approximately five/seven, weighed about 135 pounds, somewhere around 17 or 19 years of age, I believe, with short hair." Officer Mullis testified on *voir dire* that Mr. Galloway "was reluctant as to whether he could or he could not" identify anybody. Mullis also testified that Galloway did not pick defendant out of the line-up.

No charges were brought against defendant as a result of the armed robbery of Mr. Galloway.

C. The Neil Lazinsky Robbery

Neil Lazinsky was robbed while working at the DeLuca Valve Company on Ashbury Avenue in Charlotte. The DeLuca Valve Company is three to four blocks away from the Axton-Cross Company. As Lazinsky was working about 11:00 p.m. on 27 May 1982, he saw a man standing inside the garage door of the shop. The man inquired about the possibility of a job and then asked directions to North Tryon Street. After Lazinsky opened the door to let the man out, the man pointed a gun at Lazinsky's head and told him to empty his pockets or he would blow his brains out. Lazinsky did as he was told, backed inside the building, and closed and locked the door.

Lazinsky identified the defendant as the man who robbed him, describing him as a black male, about five feet seven inches tall, early- to mid-twenties, weighing 170 to 175 pounds, with a gold ball pierced earring in one ear. Lazinsky identified defendant from the same photographic array that Boyles had used to identify the defendant.

II

Because Michael Boyles identified defendant as the person who robbed him on 27 May 1982, defense counsel conceded at trial that the prosecutor had a good faith basis for asking defendant if

he in fact robbed Michael Boyles.[2] Because William Galloway *could not identify defendant* as the perpetrator of the robbery on him, and because *the State never charged defendant with the Galloway robbery*, the defendant argues that the prosecutor had no basis, other than her own speculation, for belief that defendant was the man who committed the Galloway robbery. I agree with defendant.

Questions relating to a defendant's criminal and degrading conduct must concern a specific, identifiable act of defendant, *State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981), and "the questions asked by the prosecutor *must be based on information* and must be asked in good faith." *State v. Pilkington*, 302 N.C. 505, 510, 276 S.E. 2d 389, 393, *cert. denied*, 454 U.S. 850, 70 L.Ed. 2d 140, 102 S.Ct. 290 (1981) (emphasis added). As evidence that the *Pilkington* Court was referring to two separate requirements when it said that the questions asked by the prosecutor *must be based on information* and must be asked in good faith, one need look no further than the next two sentences in *Pilkington*, which read: "In the instant case, defendant does not contend that the prosecutor acted in bad faith. Furthermore, it does not appear that the prosecutor lacked sufficient information upon which to base her questions on cross-examination." 302 N.C. at 510, 276 S.E. 2d at 393.

That the prosecutor *believed* that defendant was the person who robbed Galloway is not enough. Her belief did not satisfy the test imposed by *Pilkington*. Speculation, conjecture and surmise are not sufficient, given the strictures imposed by our case law, which refers to specific, identifiable acts of misconduct.

Further, because the defendant denied committing the robbery in this case (the Lazinsky robbery), and also denied committing the robbery in the Boyles case, knowing that witnesses had identified him as the perpetrator of both robberies, the prosecutor had little hope that defendant would admit to robbing Galloway when no one had identified him as the perpetrator and when he had not been charged with that offense. The questions asked in this situation could give the jury the impression that the

---

2. Defendant does argue, and I address the argument in Part III, *infra*, that the State could not impeach defendant by extrinsic evidence once defendant said, on cross examination, that he did not commit the Boyles robbery.

prosecutor had knowledge of facts to support the insinuations. Or, as stated by Professor Brandis: "Further, seldom, if ever, will the prosecutor anticipate that the unconvicted defendant will admit the criminal acts charged. Trial by insinuation is the compelling motive for the inquiry." 1 H. Brandis, *North Carolina Evidence* § 112 n. 61, at 418 (2d rev. ed. 1982).

In my view, it was error, given the facts of this case, for the prosecutor to question defendant about the Galloway robbery.

### III

Defendant also contends that the trial court erred in admitting evidence of, and instructing the jury on, the Boyles robbery, because (1) the State was thereby allowed to refute defendant's denial of the robbery on cross-examination by extrinsic evidence; and (2) the evidence was not competent for any other purpose. Again, I agree.

The trial court, evidently relying on *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981), and *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982), admitted the challenged evidence for the purpose of identification and not to rebut the defendant's denial that he committed the robbery. Our Supreme Court has also said, however, that the probative effect of evidence is sometimes outweighed by its prejudicial impact. *See State v. Shane*, 304 N.C. 643, 285 S.E. 2d 813 (1982). Such is the case here. Generally, in a prosecution for a particular crime, the State cannot introduce evidence tending to show that the defendant committed another separate offense. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). However, there are eight exceptions to the general rule enumerated in *McClain*. Exception No. 4 reads:

> (4) Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged. [Citations omitted.]

*Id.* at 175, 81 S.E. 2d at 367.

I am aware that the *McClain* Court nowhere sought to define or explain what it meant by its use of the words "definitely iden-

tified" in exception No. 4—the identification exception—to the general rule, and that the Supreme Court's subsequent decisions in *Leggett* and *Freeman* may have effectively read "definitively" out of the exception.[3] But that, of course, is the Supreme Court's prerogative. However, neither *Freeman* nor *Leggett* *ipso facto* compel the same reult in this case.

As indicated, on the facts of this case, it was error for the State to cross-examine defendant about an alleged robbery of Galloway. Further, I have also noted—what is now known from hindsight, but which the trial court did not know—that defendant was subsequently acquitted of the Boyles robbery. Separate and apart from those considerations, however, is the law's recognition that the prejudicial impact of some evidence outweighs its probative force. In *State v. Shane*, our Supreme Court would not let the State rely upon the "common scheme or plan" exception for admission of its evidence about defendant Shane's commission of a similar sexual offense, fellatio, with a prostitute in Fayetteville to get around the general rule that evidence of a distinctly separate criminal offense is inadmissible. The *Shane* Court said:

> [T]he facts of each case ultimately decide whether a defendant's previous commission of a sexual misdeed is peculiarly pertinent in his prosecution for another independent sexual crime. In addition, it must affirmatively appear that the probative force of such evidence outweighs the specter of undue prejudice to the defendant, and, in close cases, fundamental fairness requires giving defendant the benefit of the doubt and excluding the evidence. [Or, as it is more descriptively said in the game of baseball, the tie must go to the runner.]

304 N.C. at 654, 285 S.E. 2d at 820.

---

3. In both *Freeman* and *Leggett* our Supreme Court allowed evidence tending to show that the defendant therein committed another separate offense as bearing on identity in the case being tried, even though the defendant had been positively identified as the perpetrator of the crime charged. After referring to the identification exception in *McClain*, the *Freeman* Court, without further citation of authority, said: "Although Ms. Whitman positively identified defendant as her assailant, defendant's evidence of alibi made the question of whether the defendant was, indeed, the perpetrator the very heart of the case. It was, therefore, proper for the state, in rebuttal, to offer evidence probative of this question." 303 N.C. at 302, 278 S.E. 2d at 208-09. One year later, our Supreme Court in *Leggett* said the same thing, quoting from and citing *Freeman* as its only authority.

In this case, after defendant had presented his alibi evidence, the State got the last lick by the "mini-trial" of defendant for the Boyles robbery. This, combined with the improper question regarding the Galloway robbery, was extremely prejudicial. The jury received the image of a career robber, hardly appropriate in light of defendant's record or the subsequent disposition of the Galloway and Boyles robberies. In my view, defendant is entitled to a

New trial.