STATE OF NORTH CAROLINA v. GRANT DAWSON

No. 12

(Filed 7 April 1981)

1. **Criminal Law § 89.10— prior shoplifting by defense witness — cross-examination proper**

In a prosecution for discharging a firearm into an occupied vehicle where defendant's entire defense was built on misidentification and alibi, the Court of Appeals erred in concluding that the prosecutor's asking questions of defendant's mother concerning prior shoplifting by her was highly prejudicial to defendant, since the prosecutor's questions referred to specific acts of shoplifting; had the witness replied that she had shoplifted on a prior occasion such evidence would have been relevant to the question of her credibility; and the record did not show that the prosecutor's questions were asked in bad faith and an affirmative showing that the prosecutor acted upon a good faith belief in asking the questions was not required.

2. **Criminal Law § 73.1— hearsay testimony — admission prejudicial**

In a prosecution for discharging a firearm into an occupied vehicle where defendant's entire defense was built on misidentification and alibi, the trial court erred in admitting into evidence over defendant's objections testimony by a police officer concerning defendant's concealing of a pistol in his car, since the testimony was hearsay, was offered apparently for the purpose of showing defendant's bad character, and was offered to impeach defendant's father on a collateral matter.

3. **Criminal Law § 66.10— identification of defendant — confrontation at police station**

In-court identification of defendant by the State's witnesses was not tainted by a confrontation between the witnesses who were standing outside the police station and defendant who was brought to the station, since all witnesses had an opportunity to observe their assailant at the time of the shooting; all five witnesses stated that their in-court identification of defendant was not influenced by seeing him at the police station; and the viewing of defendant by the witnesses was wholly accidental and not suggested by any police officer.

ON the State's petition for discretionary review of a decision of the Court of Appeals reported at 48 N.C. App. 99, 268 S.E. 2d 572 (1980), reversing the judgment of *Long, Judge*, entered 9 August

1979 in the Superior Court, ROCKINGHAM County, wherein defendant was found guilty of the felony of discharging a firearm into occupied property, a violation of G.S. § 14-34.1. The State's petition for discretionary review pursuant to G.S. 7A-31 was allowed on 4 November 1980.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Dennis P. Myers for the State.*

*Bethea, Robinson, Moore & Sands, by Norwood E. Robinson, and Tharrington, Smith & Hargrove, by Wade M. Smith for the defendant appellee.*

MEYER, Justice.

In brief summary, the State's evidence tended to show that at around 10:00 p.m., on 18 August 1978, Donald W. Cox and four friends were riding in Cox's jeep in Eden, North Carolina. As Cox proceeded up Maplewood Drive, an off-white or yellow colored station wagon approached from the opposite direction and turned "sideways" in the road "like he was blocking off the road." As Cox started to pull around the station wagon, the person on the passenger side of the wagon jumped out, ran to the back of the station wagon and "hollered 'Stop or I will shoot.'" The person then fired four shots at the jeep as Cox accelerated in order to flee from the scene. The jeep was struck in three places, with at least one of the bullets penetrating the metal of the jeep and grazing one of the occupants. None of the occupants received any substantial injury. The jeep passed within ten to twelve feet of the person who fired the shots.

A few minutes later the station wagon overtook the jeep, followed it awhile, then passed and turned off into a side street.

Shortly after the shooting, Tim McCrickard, a passenger in the jeep, told Cox he thought the assailant was the older of the "Dawson brothers." McCrickard did not know Dawson's first name, however, so the group went to the Pizza Hut "to find out the guy's first name." McCrickard was told that it was Grant Dawson, and the group proceeded to the police station, where Cox swore out a warrant for Grant Dawson's arrest.

At trial, all five occupants of the jeep positively identified the defendant as the person who fired the shots.

Defendant offered evidence tending to show that he was at home with his family on the night of the shooting. The defendant testified that from approximately 7:30 p.m. until the police arrived to arrest him at approximately 11:10 p.m., he was in his parents' bedroom watching television with his father and his brother Scott. Both defendant's father and brother Scott corroborated defendant's testimony. Defendant's other two brothers also testified that the defendant was at home that evening. Defendant's mother testified that she owned a Chrysler New Yorker station wagon "which is an off-white beige." She further stated that her son was at home all day the day of the incident, and that at 9:30 p.m. that night she observed him in the master bedroom watching television. After 9:30 p.m. she was in the kitchen, and testified that, because of the design of the house, it would not have been possible for her son to leave without her seeing him do so. Defendant also offered three character witnesses.

The jury returned a verdict of guilty of discharging a firearm into occupied property. Defendant was sentenced to six months imprisonment. On appeal, the Court of Appeals held that defendant had not received a fair trial because of certain questions improperly asked of defendant's mother by the district attorney. We allowed the State's petition for discretionary review of that decision.

Defendant contends that he was denied a fair trial because of improper cross-examination of his mother. It is defendant's contention that the District Attorney's cross-examination tended to impeach the credibility of this crucial alibi witness by characterizing her as a "shoplifter." While we question the propriety of the prosecutor's conduct in asking such questions, we are unable to conclude that this possible abuse was error sufficient to warrant a new trial. However, our review of a separate assignment of error, not reached by the Court of Appeals in its decision, does disclose prejudicial error in the admission of certain rebuttal testimony offered by the State. For that reason the case must be remanded for a new trial.

[1] The Court of Appeals found prejudicial error in the questions asked by the prosecutor of defendant's mother in the following exchange:

State v. Dawson

Q. Have you on any occasion or occasions shoplifted?

MR. ROBINSON: Objection.

A. No. I was [sic] not.

Q. Do you know what I am talking about?

A. I assume by shoplifting you mean stealing.

Q. Do you often—

MR. ROBINSON: Objection to the question.

COURT: Overruled.

Q. Have you at any time or times picked up things from Mann's Drug Store without paying for them?

MR. ROBINSON: Objection.

COURT: Overruled.

A. They have been charged, no. I never picked up anything without paying for them.

Q. I will ask if you carried them home, left the store without paying for them?

MR. ROBINSON: Objection.

COURT: Overruled.

A. They had been charged to the account.

Q. Without saying anything to anybody about it?

A. Not that I know of.

Q. And that if some of the articles were not returned?

A. I have never stolen anything in my life.

Q. No further questions.

COURT: Members of the jury, you may not consider the implication of the question.

The Court of Appeals correctly recognized that, for purposes of impeachment, a witness may be cross-examined by the asking of "disparaging questions concerning collateral matters relating to

his criminal and degrading conduct." *State v. Williams*, 279 N.C. 663, 675, 185 S.E. 2d 174, 181 (1971). Cross-examination of a witness on a collateral point is allowed in order for counsel to test the credibility of the witness. The purpose of permitting inquiry into *specific* acts of criminal or degrading conduct is to allow the jury to consider these acts in weighing the credibility of a witness who has committed them. *State v. Purcell*, 296 N.C. 728, 252 S.E. 2d 772 (1979). In *Purcell*, this Court further explained that such questions must concern some identifiable specific act on defendant's part.

The most succinct statement of the bounds of permissible cross-examination in this area is found in *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971). There this Court marked the limits of such cross-examination: "generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith." *Id.* at 675, 185 S.E. 2d at 181.

Applying the two-prong standard set forth in *Williams* to the facts before us, we are unable to say that the trial judge abused his discretion in allowing the prosecutor to proceed. Parts of the cross-examination by the prosecutor in *State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1977), were held by this Court to have been improper, but there the district attorney affirmatively stated to the witness "you are lying through your teeth" and later encouraged the witness to "[t]hink up a good story." *Id.* at 215, 241 S.E. 2d at 68. Likewise, a general survey of applicable cases shows that abuse of discretion is generally found anywhere the prosecutor affirmatively placed before the jury his own opinion or "facts" which were either not in evidence or not properly admissible. *See State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1977) (prosecutor said witness was lying through his teeth); *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975) (prosecutor phrased question so as to inform jury that defendant had previously been sentenced to death row); *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762 (1954) (prosecutors' seventeen improper questions which accused defendant of numerous crimes assumed unproven insinuations to be facts.) Nor were the questions here improper under *State v. Purcell*, 296 N.C. 728, 252 S.E. 2d 772 (1979). In *Purcell*, the question "You have killed somebody haven't you, Mr. Purcell?" was held improper because it was overly broad. Since killing is not wrong *per se*, the question was improper because it could have elicited irrelevant evidence, such as the fact that defendant had killed someone in the line of military or police duty.

Conversely, "shoplifting" is always a criminal act. Furthermore, had Mrs. Dawson replied in the affirmative, such evidence would have been clearly relevant to the question of her credibility. Finally, the matters sought to be elicited by the district attorney's questions here were sufficiently specific to comply with the rule of *Purcell* that such questions refer to a specific instance.

The second limitation of permissible cross-examination in this area is that the questions must not be asked in bad faith. In considering this requirement, the Court of Appeals concluded that "[s]ince the record fails to show that the prosecutor had a good faith basis for asking the questions, the cross-examination was improper." 48 N.C. App. at 107, 268 S.E. 2d at 577. We deem the logical inference of that language, that the record must *show affirmatively* that the prosecutor acted upon a good faith belief in asking the questions, to be an incorrect statement of the law. Rather, the rule in this jurisdiction is that the questions of the prosecutor will be considered proper unless the record shows that the questions were asked in bad faith. *State v. Spaulding*, 288 N.C. 397, 219 S.E. 2d 178 (1975), *death sentence vacated*, 428 U.S. 904, 96 S. Ct. 3210, 49 L. Ed. 2d 1210 (1976). As we stated in *State v. Gaiten*, 277 N.C. 236, 240, 176 S.E. 2d 778, 782 (1970): "This record fails to show that the questions asked were not based on information and asked in good faith, and when a record is silent on a particular point, the action of the trial judge is presumed to be correct. (Citation omitted). We hold that the court correctly allowed the challenged cross-examination." It is true, as Justice Huskins stated in *State v. Britt*, 288 N.C. 699, 71, 220 S.E.2d 283, 291 (1975), that counsel may not ask "impertinent and insulting questions which he knows will not elicit competent or relevant evidence but are designed simply to badger and humiliate the witness." That language is not controlling here for the simple reason that, as stated above, had Mrs. Dawson admitted being a "shoplifter" that evidence would have been both competent and relevant. In sum, we find the strictures that questions must not be asked in bad faith and must be designed to elicit only competent evidence to be sufficient safeguards under the facts of this case.[1] No *affirmative* showing of good faith by the prosecutor is required.

Because the Court of Appeals, in its disposition of this appeal,

---

[1] Where a trial court wishes to ascertain whether the questions are based on information and asked in good faith, this Court has approved the trial court's holding a *voir dire*. *State v. Heard*, 262 N.C. 599, 138 S.E. 2d 243 (1964).

found error in the cross-examination of defendant's mother and remanded for a new trial, it did not consider any of defendant's other assignments of error. Our disagreement with the rationale of the Court of Appeals leads us to consider defendant's other assignments. We find prejudicial error in the admission of certain testimony offered by the State on rebuttal; and, based on that finding, affirm the remand of the case for a new trial.

**[2]** The improperly admitted testimony was elicited from State's witness Officer Frank Watkins. In pertinent part, Watkins testified as follows:

Q. He testified about some occasion when you were supposed to have found a pistol in the car?

A. Yes, sir.

Q. Tell us about that.

A. Well, I received a call from the radio dispatcher one night and it was some time back that Mr. Dawson—

MR. ROBINSON: Objection.

COURT: Overruled. I take it this is not offered to show the truth of it but why he may have done so.

EXCEPTION NO. 26

A. That his son was out past the time that he was supposed to be—

MR. ROBINSON: Objection on the basis this is hearsay.

COURT: But if not offered to show the truth it is admissible, even though hearsay if it goes to show why he went to stop a vehicle then it is admissible.

MR. ROBINSON: No objection to him stating the consequence of a call but to relate the call that is what I am objecting to.

COURT: Overruled.

EXCEPTION No. 27

A. I received a call that Dr. Dawson's son Grant was out later than he was supposed to be and that Grant had

---

State v. Dawson

---

Dr. Dawson's gun in the car and if I seen him to stop him and carry him home. I stopped—

MR. ROBINSON: Objection, motion that be stricken from the evidence and that the jury be instructed not to consider it.

COURT: Overruled.

EXCEPTION NO. 28

A. I stopped Grant on Stadium Drive and asked if I could search the car, and he said that I could and the pistol was stuck up under the driver's seat in a holster. I took possession of the pistol and asked Grant why he had the gun in the car. He said that he had just gotten paid and had a large sum of money. I said what do you consider a large sum and he said I got ninety dollars, and I said why did you put the gun under the seat, you know that you are concealing it. He said that he parked the car on the street and didn't want anyone to steal the gun out of the car.

I went to Dr. Dawson's house and got in touch with Dr. Dawson. He came to the door. I gave Dr. Dawson the gun and I told him that there would be no charges because I knew that the gun was there before I stopped him and Dr. Dawson thanked me and the Dr. asked Grant the same thing, why he put the gun under the seat and he said to keep anybody from stealing it.

Our finding of impropriety in this testimony is based on the fact that the testimony was hearsay,[2] and was offered apparently for the purposes of showing the defendant's bad character, and more importantly, to discredit defendant's father. On cross-examination, defendant had admitted being stopped by an officer who searched his car and found a pistol under the car seat, but had said that he did not know it was there. On redirect examination by defendant's counsel, defendant's mother testified that she knew

---

[2] More specifically, this testimony about the content of the telephone call was double hearsay. Officer Watkins in fact testified that the police dispatcher told him that Dr. Dawson had called the police station and had told the dispatcher that Grant was out too late, that the gun was in the car, and that he should be stopped and carried home.

State v. Dawson

about her son having been stopped and the pistol being found; that she always kept the gun in the automobile because someone had picked her up one time; that she kept it on the dash but put it under the seat when her son Grant took the car; and Grant "did not know that it was there;" that the only time the police could have been asked to stop Grant was when her father had a severe heart attack and the family was trying to reach him. Defendant's father, on recross-examination, stated that he had not at any time asked the police to stop his son and remove a pistol from his car; that the matter of his making any such request was "a total absolute surprise" to him. Dr. Dawson also testified on direct examination by defendant's counsel that no one ever came to his home or office to bring a gun; that it (the testimony concerning his alleged request) sounded like a total fabrication and was a total fabrication. The admission of the above quoted hearsay-upon-hearsay testimony of Officer Watkins on this collateral issue was error. As Dr. Dawson was an important alibi witness for defendant, this incompetent testimony from Officer Watkins which may have lessened Dr. Dawson's credibility must be considered prejudicial.

The trial court overruled defense objections to this testimony on the grounds that the testimony was not offered to prove the veracity of the phone call, but only to explain why the officer stopped the car. The record does not disclose when the incident occurred. Officer Watkins testified that "it was some time back." The difficulty is that the fact that an officer had stopped defendant's car at some prior time and removed a gun was irrelevant to this trial. As it was irrelevant, and because three other witnesses had already testified differently about the incident, we think the testimony was in fact offered to impeach a witness (Dr. Dawson) on a collateral matter. Since Dr. Dawson, on cross-examination, denied ever telephoning the police to stop Grant, the State was bound by this denial. It was therefore improper for the State to attempt to contradict Dr. Dawson by the use of extrinsic testimony. 1 Stansbury's North Carolina Evidence § 48 (Brandis rev. 1973). Such testimony was equally objectionable as being both hearsay and as concerning only a collateral matter. Defendant's stated objection to the testimony at trial was that it was hearsay. Failure of the trial court to sustain defendant's timely objection resulted in reversible error.

Our review of other assignments of error by defendant is limited to those which may again be brought forward after retrial.

[3]   Defendant contends by his first assignment that the trial court erred in not finding that the State's witnesses' in-court identification of the defendant was tainted by an illegal pretrial confrontation. Apparently the five occupants of the jeep were standing outside the police station, unable to leave because the jeep had a flat tire as a result of the shooting, when defendant was brought to the police station. Defendant walked past the witnesses. Upon motion by defense counsel, the trial court held a *voir dire* wherein all five witnesses stated, and the trial court found, that they had an opportunity to observe the assailant at the time of the shooting and that their in-court identification of defendant was not influenced by seeing defendant at the police station. The trial court also found that the viewing of the defendant by the witnesses was wholly accidental and not suggested by any police officer. These findings of the trial court are supported by the evidence and thus binding on appeal. *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977). This assignment is overruled.

Nor did the trial court err in not suppressing testimony concerning the identification of the station wagon allegedly used in the assault. Defendant filed a motion to suppress "[a]ll evidence and statements to be made by officers who went upon the premises of the defendant and searched the premises without a search warrant." At trial, State's witness Tim McCrickard testified without objection that he recognized the car as he rode in a police car which passed in front of the Dawson house later on the night of the shooting incident. Testimony by the police officer about McCrickard's identification of the car was limited by the trial judge as admissible only for corroboration of McCrickard's testimony. All of the testimony was properly admitted. Defendant's argument that the identification was possible only after an illegal entry by the police officer into the driveway of defendant's home is refuted by the factual record. McCrickard recognized the car as he rode with the officer on a public street. The officer only turned into the driveway in order to see the license plate of the car which McCrickard recognized. This assignment is overruled.

We deem it unnecessary to discuss other assignments since the errors alleged may not occur on retrial.

The cause is remanded to the Court of Appeals with instructions for further remand to the Superior Court, Rockingham County

for a new trial.

Modified and affirmed.