STATE OF NORTH CAROLINA v. STANFORD ANTHONY SHANE AND DEAN LEONARD WILLIAMS

No. 88

(Filed 12 January 1982)

1. **Criminal Law § 86.5— impeachment of defendant—prior misconduct—improper questions**

Although a defendant charged with sexual offenses and robbery could properly be cross-examined for impeachment purposes about his past participation in an act of fellatio with a prostitute while he was a police officer, the prosecutor's questions to defendant as to whether he resigned from the police department because of sexual "improprieties" and as to his prior conversations with another police officer about the incident and his knowledge of the content

State v. Shane

of the prostitute's allegations were improper in that they (1) included references to mere allegations of misconduct and (2) failed to identify some specific act by means of a detailed reference to the time, place, victim or circumstances of defendant's alleged prior misconduct.

**2. Criminal Law § 86.1 — impeachment of defendant upon a collateral matter**

In a prosecution for sexual offenses, an officer's rebuttal testimony that defendant told him that he had participated in a sexual offense, fellatio, with a prostitute some seven months before the crimes in question was not admissible to contradict defendant's denials of such prior misconduct but constituted improper impeachment of defendant's testimony upon a collateral matter.

**3. Criminal Law § 34; Rape and Allied Offenses § 4.1 — evidence of prior sexual offense — remoteness — inadmissibility — new trial for both defendants**

In a prosecution of two defendants for various sexual offenses, an officer's rebuttal testimony that one defendant admitted to him that he had committed a similar sexual offense, fellatio, with a prostitute some seven months prior to the acts in question was not admissible to show a common scheme or plan or for any other purpose, notwithstanding there was a similarity between the occurrences in question and such defendant's alleged earlier encounter with a prostitute in that, on both occasions, such defendant flaunted his authority as a police officer and requested illicit sexual favors in return for his agreement to drop criminal charges against the women, and the women subsequently performed fellatio upon him, either by consent or by force, since the remoteness in time between the prior offense and the crimes charged negated the existence of an ongoing and continuous plan to engage persistently in such deviant activities. Furthermore, the trial court's instruction that the jury should disregard evidence of such defendant's prior misconduct elicited during cross-examination in determining the guilt or innocence of the second defendant did not apply to the rebuttal testimony, and both defendants are therefore entitled to a new trial because of the admission of the rebuttal testimony where the defenses of both defendants were so inextricably interwoven that the jury could only have found both of them equally guilty, or not guilty, of committing the sexual offenses.

APPEAL by defendants from judgments of *Preston, Judge,* entered at the 22 September 1980 Criminal Session, CUMBERLAND Superior Court. Defendant Shane appeals as a matter of right from the judgment imposing life imprisonment for his conviction of a first degree sexual offense. His motion to bypass the Court of Appeals on his additional convictions of attempted first degree sexual offense and common law robbery was allowed on 10 March 1981. Defendant Williams was convicted of three counts of second degree sexual offense, attempted second degree rape and common law robbery. His motion to bypass the Court of Appeals and to consolidate his appeal with that of defendant Shane was allowed on 10 March 1981.

Defendant Shane, a black male, was charged in an indictment, proper in form, with first degree sexual offense, attempted first degree sexual offense and armed robbery. Defendant Williams, a white male, was charged in an indictment, proper in form, with first degree sexual offense, four counts of attempted first degree rape and armed robbery. All of the charged criminal activities arose out of an incident at the Tahiti Health Club in Cumberland County on 10 February 1980.

In pertinent part, the State's evidence tended to show that defendant Shane, a recently employed detective with the Spring Lake Police Department, and his next door neighbor, defendant Williams, went to the Tahiti Health Club twice during the evening of 10 February 1980. Shane was not on duty that evening, and both he and Williams had been drinking. Jeffrey Ray Johnson, the owner and manager, and Dolores Fugett and Carolyn Marshall, masseuses, were working at the club when defendants arrived. Johnson was alerted by David Bracey, the owner of another health club located across the street, that Shane was a police officer. Nevertheless, the two female employees explained the types of massages offered and their prices to defendants. Defendants then left; however, they returned to the club one hour later.

Shortly after their return to the Tahiti Health Club, Shane displayed a police badge to Johnson and told him that this was a "bust" and that he was under arrest. Shane ordered Johnson and the women to stand up against the wall and frisked them. Shane also searched the office desk and took a pistol which he found therein. His companion Williams already had a gun. Shane explained to Johnson, as the basis for the "arrest," that one of the women had solicited Williams for prostitution. Shane further stated that the was working for the State Bureau of Investigation in a state-wide crackdown on massage parlors. Shane then asked Johnson what he "would be willing to do to get out of this bust" and offered to drop the charge in exchange for "liberties" with the women. Johnson refused, whereupon Shane moved him to the bathroom and handcuffed him to a two by four foot stud. Thereafter, defendants, still brandishing guns, made the women undress and forced them to submit to, and perform, several degrading, illicit sexual acts.

Specifically, Dolores Fugett testified that Shane slapped her in the face until she performed fellatio upon him. Ms. Fugett also testified that Williams felt her breasts, placed in fingers in her vagina and made her perform fellatio upon him (but this sexual act was not consummated). Carolyn Marshall testified that Williams kissed her breasts, put his fingers in her vagina and rectum, attempted to have sexual intercourse with her on the floor, and performed cunnilingus and anilingus upon her. Ms. Marshall also testified that Shane later tried to make her perform fellatio upon him, but she refused. Shane did not have a weapon on that occasion.

When the sexual pillaging was completed, Shane made Ms. Fugett unlock the handcuffs on Johnson and throw all of his clothing outside. Shane tied up the women with telephone cord, which he had cut with a knife, and defendants left the Tahiti Health Club. Shane took Johnson's pistol with him.

Defendants' evidence was as follows. Defendants admitted that they went to the Tahiti Health Club on 10 February 1980. They went there to investigate their "information" that the club was involved in prostitution and drugs. Their specific intent was to catch someone in the act of soliciting for prostitution. During their first visit to the club, Shane went to the restroom, leaving his jacket in the front office, while Williams inquired about the available services and prices from the women. After defendants left the club, Shane discovered that $50.00 was missing from his jacket. Defendants decided to return to the club to get more evidence about the illegal activities there.

On defendants' second visit to the club, Shane confronted Johnson about the stolen money, whereupon Johnson stood up and opened his desk drawer. Shane told Johnson to "freeze" and identified himself as a police officer. [Shane said he did not have his police badge when he went to the club.] Shane observed a gun in the desk drawer. He took the gun and unloaded it. Johnson then told Shane that they could "work it out," but he refused to return the stolen money and warned Shane that he would "never make it out the door alive." Shane put Johnson in the bathroom. Shane kept Johnson's pistol, as a precaution, and told Johnson he could retrieve the weapon at the Law Center the next day. Defendants left.

Both defendants denied engaging in any form of sexual activity with either Dolores Fugett or Carolyn Marshall. In addition, both defendants maintained that they had no weapons in their possession at the club and that the only weapon they observed at the scene was Johnson's own .38 caliber pistol.

William C. Johnson of the Fayetteville Police Department testified as a rebuttal witness for the State. He stated that Shane had previously worked for him for four years but had left the department in the summer of 1979. Officer Johnson said he questioned Shane about an alleged incident involving oral sex with "another individual" and that Shane had admitted the actual occurrence of the event but had denied any use of force in connection therewith.

Daniel Joseph Ford, a detective sergeant with the Cumberland County Sheriff's Department, also testified on rebuttal for the State and read to the jury defendants' formal statements about what happened at the Tahiti Health Club. Officer Ford said that he and Shane had conversed further after his statement was taken. At that time, Shane told him that "he did allow a girl to perform oral sex on him at the Tahiti Health Club on the 10th of February, however . . . it was consensual."

Upon submission of all of the evidence, the jury found defendant Shane guilty of first degree sexual offense, attempted first degree sexual offense and common law robbery. The trial court imposed a life sentence for the first degree sexual offense and entered a consolidated judgment of ten years imprisonment for the other offenses to commence at the expiration of the life sentence. The jury found defendant Williams guilty of three counts of second degree sexual offense, attempted second degree rape and common law robbery. The trial court imposed, respectively, a consolidated prison sentence of forty years, a concurrent ten year term and another ten years imprisonment to commence at the expiration of the other sentences.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

*Barrington, Jones, Witcover, Carter & Armstrong, by Carl A. Barrington, Jr., for defendant Shane; and Jack E. Carter for defendant Williams.*

COPELAND, Justice.

Defendants filed a joint brief in this appeal.[1] Defendant Shane argues six assignments of error, two of which are also properly raised by defendant Williams. We are persuaded, after a careful review of the applicable law and the circumstances of this case, that both defendants are entitled to a new trial upon the charges of sexual crimes. We shall address defendants' mutual assignments of error first.

## I.

[1] Defendants contend that the trial court erred in permitting the State to cross-examine Shane about a prostitute's performance of fellatio upon him, seven months prior to the occurrence of the charged events at the Tahiti Health Club, while he was employed as a police officer in Fayetteville. It is well established that a criminal defendant may be cross-examined about prior acts of misconduct, even if he was not convicted therefor, for the purpose of impeachment, provided the questions are asked in good faith. *State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980); *State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979). Indeed, all kinds of facts, which are disparaging to a defendant's character, may be elicited upon cross-examination. *See State v. Dawson*, 302 N.C. 581, 584-85, 276 S.E. 2d 348, 351 (1981); 1 Stansbury's North Carolina Evidence § 111, at 341 (Brandis rev. 1973). Thus, as a general matter, defendant Shane could be properly questioned about his past participation in an act of fellatio with a prostitute because such conduct is not only immoral, it is also legally proscribed in North Carolina as a crime against nature, regardless of its consensual character. *See* G.S. 14-177; *State v. Adams*, 299 N.C. 699, 706-07, 264 S.E. 2d 46, 50 (1980). In addition, the record plainly shows that the district attorney asked about this prior affair with the prostitute in good faith based upon sufficient knowledge thereof.[2] Nevertheless, defendants ardently contend,

---

1. In their brief, defendants only listed the pertinent exceptions in the record under each question presented for review. Rule 28(b)(3) of the North Carolina Rules of Appellate Procedure states that the specific assignments of error, being relied upon in support of the corresponding argument, should also be set out under each question.

2. William C. Johnson, Commander of the Intelligence Division of the Fayette-ville Police Department, testified on *voir dire* examination that he had

as they did at trial, that the district attorney's questions were propounded *in an improper form.* In this regard, their assignment of error has merit.

From the outset of his inquiry into this subject, the prosecutor focused upon the circumstances surrounding the termination of Shane's previous employment with the Fayetteville Police Department:

> Q.   You resigned from the intelligence unit because of sexual improprieties, didn't you?
>
> .   .   .
>
> WITNESS: I resigned from the intelligence police department because a prostitute downtown made allegations against me; and for the betterment of the department and myself, I resigned.
>
> .   .   .
>
> MR. RAND: In resigning, you told Mr. Bill Johnson, did you not, about this incident?
>
> .   .   .
>
> MR. RAND: You told Mr. Johnson, did you not, about this matter; that you just weren't thinking; that all you were doing was getting a shot of cock, didn't you?
>
> .   .   .
>
> WITNESS: I did not sir.
>
> MR. RAND: You did not tell him that?
>
> A.   I did not, sir.
>
> Q.   Mr. Johnson is the head of the intelligence unit, isn't he?
>
> A.   Yes, sir, Mr. Bill Johnson.

turned over the results of an internal investigation of the matter to the district attorney's office for its determination of whether the circumstances warranted a criminal prosecution against Shane. In fact, the State unsuccessfully tried to introduce a copy of that very report at trial.

Q. You talked to Mr. Johnson about this alleged incident with the prostitute, didn't you?

. . .

WITNESS: Yes, sir, I did.

. . .

MR. RAND: It involved oral sex, didn't it?

. . .

WITNESS: It was an allegation that was made —

. . .

MR. RAND: It involved oral sex, didn't it?

. . .

WITNESS: I don't know sir. I know it involved some allegation.

. . .

MR. RAND: You were certainly informed of the allegations by your superiors, weren't you?

. . .

WITNESS: I was informed of — yes, sir, I was.

MR. RAND: And you know it involved oral sex, didn't you, by you when you picked up a girl and asked her what she would do to keep from getting busted?

. . .

MR. RAND: Didn't you?

. . .

WITNESS: No, I did not.

[Defendants' duly entered, but overruled, objections, motions to strike and exceptions to this questioning are omitted.] Defendants attack the method of the foregoing inquisition about Shane's past bad acts upon two bases: (1) its impermissible inclusion of references to mere allegations of misconduct and (2) its failure to identify directly a specific instance of reprehensible behavior.

State v. Shane

Though a defendant's former evil exploits or iniquities are "fair game" during cross-examination, as a means of challenging his veracity, the mode of the inquiry is not without limitation. First, the prosecutor may not attempt to impeach a defendant's character by asking about, or referring to, prior arrests, indictments, or any other accusations of misconduct. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971); 1 Stansbury's North Carolina Evidence § 112, at 344-45 (Brandis rev. 1973).[3] In the instant case, the prosecutor committed this very transgression by framing his questions to defendant Shane in terms of imputations or allegations of prior misconduct. We are aware, however, that defendant himself mentioned the inappropriate subject of prior allegations of improprieties first, as well as several times thereafter. Yet the general tenor and ambiguity of the prosecutor's questions, see *infra,* practically forced defendant to answer in such terms. In *State v. Purcell,* 296 N.C. 728, 733, 252 S.E. 2d 772, 775 (1979), this Court disapproved of a question which essentially requested the defendant to repeat informal accusations of wrongful conduct formerly made against him. A similar reproof is mandated here, and we decline to hold that defendant's own allusions to the prior allegations, as he attempted to answer the questions posed to him, automatically granted the prosecutor free license to pursue and develop that incorrect focus. Second, it is equally clear that a prosecutor must ask questions designed to determine expressly and directly whether a defendant has actually committed a certain moral or legal infraction in the past. In *State v. Mason,* this Court affirmed the sustension of the State's objection to the question, "Were you involved in what you call street gang operations in New York?" 295 N.C. 584, 592-93, 248 S.E. 2d 241, 247 (1978), *cert. denied,* 440 U.S. 984, 99 S.Ct. 1797, 60 L.Ed. 2d 246 (1979). The prosecutor's opening query here, "you *resigned* from the intelligence unit because of sexual *improprieties,* didn't you?" is certainly no more successful in identifying a particular act of misconduct. (Emphases added.)

A legitimate inference of foul play does not invariably arise from the mere act of resigning from employment. Moreover, the term "improprieties" is overly broad because an improper act

---

3. If the rule were otherwise, a witness could be placed in the untenable position of having to defend himself against unproved insinuations or rumors of past behavior in order to maintain his testimonial credibility at an unrelated trial.

does not necessarily connote a breach of moral or legal mores, and the plural form of the word suggests the commission of several acts without particularizing a single, specific event for the jury to consider in evaluating credibility. *See State v. Purcell, supra; State v. Mason, supra.* Defendant Shane was never asked outright whether he had engaged in an earlier sexual misdeed with a prostitute. Instead, Shane was interrogated about his prior *conversations* with another police officer about the incident and his *knowledge* of the content of the prostitute's allegations. Thus, we conclude that the prosecutor's cross-examination of Shane was not competently tailored to elicit his affirmance or denial of "some identifiable specific act" by means of a *detailed* reference to "the time or the place or the victim or any of the circumstances of defendant's alleged prior misconduct." *State v. Purcell, supra,* 296 N.C. at 732-33, 252 S.E. 2d at 775; *see State v. Herbin,* 298 N.C. 441, 451, 259 S.E. 2d 263, 270 (1979). We need not determine here, however, whether such error constituted prejudice sufficient to require a new trial because we find that another, more substantial error impels an order of re-trial, see *infra.*

## II.

Defendants additionally argue that the trial court erroneously denied their motion to suppress the rebuttal testimony of Officer William C. Johnson, Shane's former supervisor in the intelligence division of the Fayetteville Police Department. Specifically, Officer Johnson testified that he had two conversations with Shane on 10 and 11 July 1979 about allegations by "another individual" involving oral sex. Officer Johnson said Shane told him the following things in the course of their conversations: (1) that the incident had occurred; (2) that no force had been used during the event; and (3) that "he just was not thinking; that he only got a shot of cock." Simply put, the issue is whether this rebuttal evidence was competent under any theory of admissibility. We hold that it was not.

[2] First, Officer Johnson's testimony was certainly not admissible, as the State argues, to impeach defendant Shane's trial testimony about the alleged sexual impropriety of July 1979 with his own prior inconsistent statements. For, the rule is well settled in this jurisdiction that, though a witness's character or propensi-

State v. Shane

ty for telling the truth is subject to impeachment through cross-examination about specific instances of misconduct or prior inconsistent statements, the witness's answers to such questions are conclusive, and he may not be further impeached or contradicted through the introduction of *any kind* of extrinsic evidence. *State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981); *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971); *State v. Gaiten*, 277 N.C. 236, 176 S.E. 2d 778 (1970); *State v. Broom*, 222 N.C. 324, 22 S.E. 2d 926 (1942); *see* 1 Stansbury's North Carolina Evidence § 111 (Brandis rev. 1973); McCormick's Handbook of the Law of Evidence §§ 36, 42 (2d ed. 1972). The rule is a particularized application of the broader evidentiary principle prohibiting impeachment upon a collateral matter. *State v. Dawson, supra*; 1 Stansbury, *supra*, § 48.[4]

[3]  Second, Officer Johnson's testimony was also not admissible for any other competent purpose in this case. Receipt of extrinsic evidence disputing defendant Shane's testimony would have been permissible *only if* the evidence about his prior misconduct exhibited a distinct materiality or relevancy, beyond its mere capacity for impeachment, and thus could have been properly proven as part of the State's case in chief. *See State v. Taylor*, 250 N.C. 363, 108 S.E. 2d 629 (1959); 1 Stansbury's North Carolina Evidence § 48, at 136-37, and § 111, at 342 (Brandis rev. 1973); McCormick's Handbook of the Law of Evidence § 47 (2d ed. 1972); 3A Wigmore on Evidence § 879 (Chadbourn rev. 1970). The challenged testimony does not meet these requirements for independent admission. In so stating, we expressly reject the State's all-inclusive argument that any evidence about Shane's earlier sexual misbehavior was admissible as evidence of another similar offense.

By virtue of a sound legal axiom, substantive evidence of a defendant's past, and distinctly separate, criminal activities or

---

4. The general prohibition against double impeachment of a witness upon a matter not directly in issue makes good common-sense. For, the development of a "mini-trial" upon a defendant's guilt of some collateral misconduct or the presentation of "an interminable series of contradictions of a witness's testimony about a point of minor relevancy would confuse the jury and unnecessarily distract its attention from the true issues presently being tried. *See State v. Royal*, 300 N.C. 515, 532, 268 S.E. 2d 517, 528 (1980) (Exum, J., dissenting); *Clark v. Clark*, 65 N.C. 655, 661 (1871). *See also State v. Simpson*, 297 N.C. 399, 407, 255 S.E. 2d 147, 152-53 (1979).

misconduct is generally excluded when its only logical relevancy is to suggest defendant's propensity or predisposition to commit the type of offense with which he is presently charged. *State v. McQueen*, 295 N.C. 96, 244 S.E. 2d 414 (1978); 1 Stansbury's North Carolina Evidence § 91 (Brandis rev. 1973). "Logical relevancy" is capably demonstrated whenever such evidence has some bearing upon genuine questions concerning knowledge, identity, intent, motive, plan or design, connected crimes, or consensual illicit sexual acts between the same parties. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury, *supra*, § 92; *see, e.g., State v. Searles*, --- N.C. ---, 282 S.E. 2d 430 (1981) (motive, intent); *State v. Freeman*, 303 N.C. 299, 278 S.E. 2d 207 (1981) (identity).[5] In the instant case, the State relies upon the common scheme or plan exception for admission of its evidence about defendant Shane's commission of a similar sexual offense, fellatio, with a prostitute in Fayetteville. We are not so persuaded.

At the outset, we acknowledge that our courts, as well as those of other jurisdictions, have been "very liberal" in admitting evidence of similar sexual offenses under one or more of the exceptions listed above. *State v. Greene*, 294 N.C. 418, 423, 241 S.E. 2d 662, 665 (1978); *see* 1 Stansbury's North Carolina Evidence § 92, at 299 (Brandis rev. 1973); Wharton's Criminal Evidence § 250, at 570 (13th ed. 1972); Annot., 77 A.L.R. 2d 841 (1961). *See also* 2 Wigmore on Evidence § 357 (Chadbourn rev. 1979). Nevertheless, the facts of each case ultimately decide whether a defendant's previous commission of a sexual misdeed is peculiarly pertinent in his prosecution for another independent sexual crime. In addition, it must affirmatively appear that the probative force of such evidence outweighs the specter of undue prejudice to the defendant, and, in close cases, fundamental fairness requires giving defendant the benefit of the doubt and excluding the evidence. [Or, as it is more descriptively said in the game of baseball, the tie must go to the runner.] *State v. Barfield*, 298 N.C. 306,

---

5. It should be noted that, in this case, there was never any issue about the identity of the alleged sexual assailants. Throughout the criminal investigation, the employees of the Tahiti Health Club positively and consistently identified Shane and Williams as the perpetrators of the charged offenses. In addition, Shane and Williams did not tender an alibi defense—they plainly admitted that they were at the club at the times in question. The sum and substance of the case was simply determining who was telling the truth about whether Shane and Williams had actually committed any sexual crimes while they were at the club.

325-26, 259 S.E. 2d 510, 527-28 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed. 2d 1137 (1980); *State v. McClain*, 240 N.C. 171, 176-77, 81 S.E. 2d 364, 368 (1954). More particularly, it is evident that the period of time elapsing between the separate sexual events plays an important part in this balancing process, especially when the State offers the evidence of like misconduct to show the existence of a common plan or design for defendant's perpetration of this sort of crime. *See, e.g., State v. Rick*, 304 N.C. 356, 283 S.E. 2d 512 (1981) (attacks upon three women, at different places, within a four-hour period); *State v. Williams*, 303, 507, 279 S.E. 2d 592 (1981) (sexual advances to three minor girls, at different times, on same day); *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980) (defendant related his "recent" crimes to victim prior to raping her); *State v. Greene, supra* (assault with intent to rape of one woman and rape of another within a three-hour period). *See generally* Annot., 88 A.L.R. 3d 8 (1978).

In the case at bar, there is indeed a striking similarity between the alleged factual occurrences at the Tahiti Health Club on 10 February 1980 and defendant Shane's alleged encounter with a prostitute in July 1979. Among other things, the State's evidence tended to show that on both occasions, Shane, flaunting his authority as a police officer, requested illicit sexual favors in return for his agreement to drop criminal charges of prostitution against the women and that the women subsequently performed fellatio upon him, either by consent or force. However, these events occurred at different places, involved different women, were separated by a period of *seven months*, and, in the latter occurrence, included the participation of another partner in the crime. In an analogous case, *State v. Gammons*, the defendant, a preacher, was accused of assault with intent to commit rape upon a female member of his church after he had lured her into a basement bedroom in his house on a religious pretext (to pray). 258 N.C. 522, 128 S.E. 2d 860 (1963), *overruled on other grounds, State v. Hunt*, 283 N.C. 617, 197 S.E. 2d 513 (1973).[6] Over defendant's objection, the trial court admitted the testimony of a former member of defendant's church who said that, two years earlier, she had permitted defendant to have sexual intercourse with her in his basement bedroom because he had told her that she would

---

6. The facts are more fully explicated in a subsequent opinion rendered in the case reported at 260 N.C. 753, 133 S.E. 2d 649 (1963).

be "deathly sick" if she did not succumb to his wishes. Despite the remarkable resemblance between the two offenses, our Court held it was error, requiring a new trial, to admit this testimony about the earlier affair because it did not fall within *any* of the well-delineated exceptions to the general rule forbidding admission of evidence of a distinct, disconnected offense to prove the commission of another independent crime. 258 N.C. at 524, 128 S.E. 2d at 862. We are bound to reach that same conclusion here and find that the remoteness in time between defendant Shane's alleged offense in 1979 and the crimes charged against both defendants in 1980 substantially negated the plausibility of the existence of an ongoing and continuous plan to engage persistently in such deviant activities. *Accord, Larkins v. State*, 230 Ga. 418, 197 S.E. 2d 367 (1973) (erroneous admission of evidence of rape of another woman by defendant some *seven months* earlier, even though it was accomplished in a manner very similar to that of the charged rape.)

Thus, we hold that the rebuttal testimony of Officer Johnson constituted improper impeachment of defendant Shane's testimony upon a collateral matter and was not admissible as substantive evidence of a similar offense. The prejudicial and inflammatory impact of the incompetent evidence is obvious under the circumstances of this case, and its erroneous admission requires a new trial of *both* defendants.

III.

At this juncture, the State argues that defendant Williams is not equally entitled to a new trial for the foregoing error because the trial court specifically instructed the jury not to consider the challenged rebuttal evidence in determining his guilt or innocence. However, the record plainly refutes the State's contention. We quote the portion of the judge's charge relied upon by the State:

During *cross examination* of codefendant Stanford Anthony Shane, he was questioned regarding circumstances surrounding his termination as an employee of the . . . Fayetteville Police Department. This testimony was admitted for the sole purpose of impeaching the credibility of said codefendant if, in fact, you find that it does impeach his testimony. Therefore, you are instructed that the questions and answers concerning employment of the codefendant Stanford Anthony Shane are not to be considered as evidence of

guilt of the defendant Dean L. Williams. Therefore, I instruct you that the questions and answers concerning the employment of the defendant Shane with the Fayetteville Police Department are to be considered for no purpose whatsoever in determining the guilt or innocence of Dean L. Williams.

(Record, p. 106 (emphasis added).)

We find that these instructions adequately and correctly informed the jury to disregard the evidence of Shane's prior misconduct elicited during his *cross-examination* in reaching a verdict upon the charges against defendant Williams. The instructions did not, however, expressly mention Officer Johnson's similar testimony and did not, therefore, clearly admonish the jury to ignore this incompetent evidence in its deliberations against Williams. This being so, and it duly appearing that defendants' defenses were so inextricably interwoven that the jury could only rationally find both of them equally guilty, or not guilty, of committing the sexual offenses at the Tahiti Health Club, we hold that defendant Williams must also receive a new trial in the interests of the fair administration of justice and the policy favoring consistency of verdicts in the same cause. *See May v. Grove,* 195 N.C. 235, 141 S.E. 750 (1928).

## IV.

In sum, we hold the following: (1) defendant Shane's prior misconduct with a prostitute was a proper subject of cross-examination to impeach his character and credibility; (2) the prosecutor's questions in that regard were not, however, propounded in a precise and permissible fashion; (3) extrinsic evidence, in the form of Officer Johnson's rebuttal testimony, was not admissible to contradict defendant Shane's denials regarding prior misconduct; (4) Officer Johnson's testimony was also not admissible as substantive evidence of a similar offense; and (5) the erroneous admission of such extrinsic evidence requires a new trial of both defendants.

Our disposition of the case renders consideration of defendant Shane's additional, separate assignments of error unnecessary, as such errors are not likely to recur at the next trial.

In conclusion, we note that the State's evidence, if believed, showed that these defendants travelled the sordid road of Sodom and Gomorrah yet, by the judgments imposed upon them, would have been subjected to a fate far less severe than that which

befell those two cities. Even so, we must reluctantly disturb the jury verdicts, due to the commission of a serious and harmful error at trial, to enforce defendants' fundamental right to an impartial adjudication of their guilt. However, we find that the evidentiary error only presented a reasonable probability of improperly influencing the trial outcome regarding the sexual offenses and thus uphold the verdicts rendered against both defendants on the common law robbery counts. As the trial court consolidated the judgments against defendant Shane for the robbery and an attempted sexual offense, we must remand for separate re-sentencing upon his robbery conviction alone.

New trial, of both defendants, upon the charged sexual offenses.

No error in defendants' convictions for common law robbery.

Remanded for re-sentencing of defendant Shane upon his robbery conviction.

Justice CARLTON concurs in the result.