State v. Dixon

STATE OF NORTH CAROLINA v. D. K. DIXON, JR.

No. 8412SC1142

(Filed 1 October 1985)

1. **Assault and Battery § 14— communicating threats — sufficient evidence**

The evidence was sufficient to support defendant police officer's conviction of communicating threats to the driver and a passenger in a car by pointing a gun at them and threatening to blow their heads off while the officer was investigating the occupants of the car because of an alleged traffic violation.

2. **Criminal Law § 89.6; Witnesses § 6— pending civil litigation — competency to show bias**

In a prosecution of a law officer for communicating threats, evidence of pending civil litigation filed by one prosecuting witness against defendant was admissible to show bias or interest of the prosecuting witnesses, and the exclusion of such evidence was prejudicial to defendant because the State's case against defendant hinged on the credibility of the prosecuting witnesses.

3. **Criminal Law § 86.5— impeachment of defendant — prior uses of excessive force**

In a prosecution of a law officer for communicating threats, cross-examination of defendant concerning his alleged prior uses of excessive force was permissible for impeachment purposes where there is nothing in the record that shows the questions were asked in bad faith.

4. **Criminal Law § 34.8— other altercations — incompetent to show common plan or scheme — disposition to commit offense charged**

In a prosecution of a law officer for communicating threats, testimony concerning defendant's altercation with one witness sixteen months prior to the incident in question and his altercation with another witness two days before the incident did not come within the exception permitting evidence of other crimes or misconduct to show a common plan or scheme. Rather, such testimony tended only to show defendant's disposition to commit the offenses charged, and its admission was prejudicial error.

APPEAL by defendant from *Preston, Judge.* Judgment entered 8 June 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 21 August 1985.

*Attorney General Lacy H. Thornburg by. Assistant Attorney General Guy A. Hamlin for the State.*

*Barrington, Jones, Armstrong & Flora by Carl A. Barrington, Jr.; and Larry McGlothlin for the defendant appellant.*

COZORT, Judge.

Defendant was charged with the misdemeanors of communicating threats (G.S. 14-277.1) and assault by pointing a gun (G.S. 14-34) against the person of Ernest Parker and with communicating threats and assault with a deadly weapon (G.S. 14-33(b)(1)) against the person of James Parker. Defendant pled not guilty to all four charges. The jury found the defendant guilty on both counts of communicating threats and not guilty of the other two charges. Defendant was sentenced to a six-month active term. Defendant appeals from the judgment claiming, among other assignments of error, that it was prejudicial error for the court (1) to allow the State's motion *in limine* thereby excluding evidence at trial of pending civil litigation between one of the prosecuting witnesses and defendant and (2) to allow the State on rebuttal, over defendant's objections, to present witnesses who testified about collateral matters contradicting defendant's testimony. For the reasons stated below, we grant a new trial.

The evidence presented by the State at trial tended to show the following: On 25 October 1983, at about 3:30 in the afternoon, prosecuting witness James Parker and his wife drove their son, prosecuting witness Ernest Parker, to East Fayetteville to visit his friends. Ernest, who is twenty-three years old, is crippled by arthritis and walks with crutches. His parents dropped him off at Williford's Seafood. According to Ernest's testimony he spent the afternoon and evening visiting with friends in the area.

Sometime after 11:00 that evening, Ernest called home and asked his father to come get him. James left home to pick up his son accompanied by Gary Stewart, a friend of the family who was visiting at the time. James returned to the area around Williford's where he had left his son that afternoon. James pulled

over to the side of the road, spotted his son at a nearby house, put on his flasher lights, and he and Stewart got out of the car to go assist Ernest.

The three men got back in the car. James drove, Ernest sat beside him, and Stewart sat in the back seat. Ernest asked his father to go to the Hardee's down the street because he was hungry. They drove down Grove Street, got in the left-hand lane, and when they were opposite Hardee's, turned left over the median into Hardee's driveway. Then they drove up to the take out window and began to place their order. A few minutes later Police Officer Dixon, defendant here, approached the Parker vehicle and asked James to produce his driver's license and automobile registration. As James reached for the requested documents, Officer Dixon pulled his gun, pressed it up against James Parker's mouth and said, "Don't move. I'll blow your fucking brains out." Officer Dixon repeated this threat several times over the next few minutes. According to testimony, defendant pressed the gun up against James Parker's mouth in such a way that it caused his mouth to bleed.

Officer Dixon asked Parker to pull over into a parking spot because they were blocking traffic to the take out window. Defendant got James out of the car. Defendant then holstered his gun, searched Parker and administered a sobriety test. Ernest got out of the car and objected to defendant about the "mistreatment" of his father. Defendant issued a citation for, "[d]riv[ing] said vehicle over and across a curb on said highway in violation of G.S. 20-140.3." A motion to quash was allowed by Judge Cherry when the matter came to court on 8 November 1983.

The Parkers testified that a bayonet purchased at a flea market was in the car, lying on the dashboard in open view at the time they were approached by defendant.

After he took the citation from Officer Dixon, James Parker told Dixon he would like to talk to someone about defendant's treatment of him. Dixon told him to talk to his commanding officer. The Parkers and Stewart went to the Law Enforcement Center where they complained to the "desk sergeant" and later Sgt. Sessoms about how defendant had treated them.

Defendant presented evidence which tended to show the following: He observed a Ford LTD unattended with the motor

running in front of a known "drug house." Shortly thereafter defendant watched as the car pulled away from the house. He followed the car as it proceeded erratically down the road. Officer Dixon checked the license plate with police headquarters and found that it had been issued to a 1974 Chevrolet and not a Ford LTD. The Ford was driven across a raised median strip into a Hardee's on the other side of the street. Officer Dixon followed the car into Hardee's with the intention of stopping it. Defendant "figured" that the erratic driving, the questionable plates, and driving over the median gave him probable cause to stop the driver of the Ford.

Officer Dixon approached the vehicle while it was stopped in the take out lane. He asked the driver, who was James Parker, to let him see his license and the automobile registration. Noting that they were in the way of other traffic, Officer Dixon asked Parker to pull his car over to the side of the parking lot. When the Parker car came to a halt, Officer Dixon approached the car again and observed the bayonet on the dash, which alerted him that there might be other weapons in the car. He asked all three men to put their hands where he could see them. James Parker and Gary Stewart cooperated, but Ernest Parker said irately, "What you stopping us for? What the fuck is going on?" Officer Dixon noticed an odor of alcohol emanating from the car. Defendant again requested to see James' driver's license and automobile registration. Ernest made an abrupt move in the direction of the bayonet on the dash. Thinking he was in jeopardy, Officer Dixon drew his gun and pointed it at Ernest and told him he "would blow his fucking head off." Defendant felt he needed to take strong measures to regain control of the situation. Ernest put his hands on the dash. At that point Officer Dixon helped James Parker out of the car, searched him, gave him a sobriety test and wrote out a citation for crossing the median.

[1] First, we address defendant's contention that the evidence was insufficient to go to the jury on the communicating threats charges.

Upon a motion to dismiss in a criminal action, "all of the evidence favorable to the State, whether competent or incompetent, must be considered, such evidence must be deemed true and considered in the light most favorable to the State, discrepancies

and contradictions therein are disregarded and the State is entitled to every inference of fact which may be reasonably deduced therefrom." *State v. Witherspoon,* 293 N.C. 321, 326, 237 S.E. 2d 822, 826 (1977). A review of the record in light of the above-quoted standard reveals that the evidence was more than sufficient to go to the jury on the communicating threats charges. We overrule this assignment of error.

[2] Next, we consider whether the trial court erred in granting the State's motion *in limine* to suppress evidence of pending civil litigation filed by State's witness James Parker against the defendant.

On 13 March 1984 James Parker filed suit in federal court against the defendant, the City of Fayetteville, and others seeking $5,000,000.00 in compensatory and punitive damages for violation of his civil rights under 42 U.S.C. Sec. 1983. That suit was pending at the time this criminal action was tried and is based on the same acts involved in the criminal action. Prior to empaneling the jury, the State orally moved the court to prohibit the defendant from mentioning any civil litigation between the parties. The court allowed the motion. Defendant argues that it was prejudicial error to allow the motion because evidence of the civil suit, filed by prosecuting witness James Parker against the defendant, is admissible to show that James Parker, his son Ernest Parker, and close family friend Gary Stewart have a bias or interest in the outcome of the criminal action. We agree.

In *State v. Hart,* 239 N.C. 709, 711, 80 S.E. 2d 901, 902 (1954), our Supreme Court held that:

> A party to an action or proceeding, either civil or criminal, may elicit from an opposing witness on cross-examination particular facts having a logical tendency to show that the witness is biased against him or his cause, or that the witness is interested adversely to him in the outcome of the litigation. [Citations omitted.] Under this rule, a witness for the prosecution in a criminal case may be compelled to disclose on cross-examination that he has brought, or is preparing to bring a civil action for damages against the accused based on the acts involved in the criminal case.

Thus, as in *Hart,* the "exclusion of the facts relating to the civil [action]" brought by James Parker against defendant "constituted

prejudicial error [and necessitates] a new trial." *Id.*, 239 N.C. at 713, 80 S.E. 2d at 904. The exclusion of the facts relating to the civil action was particularly prejudicial to the defendant because the State's case against the defendant hinged on the credibility of the Parkers and Stewart.

Having ordered a new trial we now turn to two issues likely to arise on retrial.

[3]    Defendant argues that it was prejudicial error for the trial court to allow the State to cross-examine the defendant about alleged prior use of excessive force and to allow the State on rebuttal, through the testimony of witnesses James Bradford, James Steven Lee, and Nancy Crittenden, to introduce evidence of two of these prior bad acts allegedly committed by the defendant.

On cross-examination defendant was asked about his uses of excessive force, while a police officer, against five citizens. The defendant denied the accusations and testified that he did not recall James Steven Lee, and did not recall pushing him against the car; he did not place a gun against the head of Ellis McPherson and tell him he "would blow his fucking brains out"; he did not remember pulling his gun on Charles Henry Davis and telling him he would "blow his fucking brains out"; he did not throw a Mr. Bradford up against the car; and he did not slam Eddie McLean against the pavement and give him "body shots." Defendant moved to strike these questions by the State with regard to these alleged prior bad acts but the court denied the motion and defendant excepted.

On rebuttal the State called James Steven Lee, James Markham Bradford, and Nancy Crittenden to testify about two of these alleged prior acts of misconduct. James Steven Lee testified, in substance, that in June of 1982 he was stopped by the defendant for running a red light; that during the course of the detention defendant threw him against the hood of the car and physically and verbally abused him. James Bradford testified that on 24 October 1983 (two days before the incident with the Parkers), he was stopped by defendant, and during the course of the stop defendant approached him and said "shut your goddam mouth and put your fucking hands on the car." Defendant grabbed him by the back of the pants, pushed him against the car

and kicked his legs apart when he could not spread them any further apart. Mr. Bradford was charged with careless and reckless driving and carrying a concealed weapon. Nancy Crittenden, who was riding with Bradford, corroborated Mr. Bradford's version of the incident. Defendant objected and excepted to the testimony of witnesses Lee, Bradford and Crittenden.

We first address the cross examination of defendant. When a defendant testifies in a criminal case he may be cross-examined, for impeachment purposes, concerning prior acts of misconduct, even if he had not been convicted therefor, so long as the questions are asked in good faith. *State v. Calloway,* 305 N.C. 747, 291 S.E. 2d 622 (1982); *State v. Shane,* 304 N.C. 643, 285 S.E. 2d 813 (1982). There is nothing in the record which shows the questions concerning the alleged prior bad acts were asked in bad faith; therefore, the questions are presumed proper. *State v. Dawson,* 302 N.C. 581, 276 S.E. 2d 348 (1981). Furthermore, the prosecutor's questions were "competently tailored to elicit [the defendant's] affirmance or denial of 'some identifiable specific act' by means of a *detailed* reference to 'the time or the place or the victim or . . . circumstances of defendant's alleged prior misconduct.'" *State v. Shane, supra,* 304 N.C. at 652, 285 S.E. 2d at 819, *quoting State v. Purcell,* 296 N.C. 728, 732-33, 252 S.E. 2d 772, 775 (1979). The propriety or unfairness of cross-examination rests largely in the trial judge's discretion, therefore, "'[h]is ruling thereon will not be disturbed without a showing of gross abuse of discretion.'" *State v. Calloway, supra,* 305 N.C. at 752, 291 S.E. 2d at 626, *quoting State v. Foster,* 293 N.C. 674, 239 S.E. 2d 449 (1977). Defendant has shown no abuse of discretion here. We hold there was no error in allowing the State to cross-examine the defendant concerning his alleged prior uses of excessive force.

[4] The testimony of witnesses Lee, Bradford, and Crittenden, however, is a different matter. It "is well settled in this jurisdiction that, though a witness's character or propensity for telling the truth is subject to impeachment through cross-examination about specific instances of misconduct . . . the witness's answers to such questions are conclusive, and he may not be further impeached or contradicted through the introduction *of any* kind of extrinsic evidence." *State v. Shane, supra,* 304 N.C. at 652-53, 285 S.E. 2d at 819. Evidence that defendant has committed other criminal offenses or misconduct "is inadmissible on the issue of

guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows guilt of another crime." *State v. Barfield,* 298 N.C. 306, 325, 259 S.E. 2d 510, 527 (1979), *cert. denied,* 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050 (1980). Therefore, if such evidence is logically relevant to issues "concerning knowledge, identity, intent, motive, plan or design, [or] connected crimes . . .", it is admissible provided that it affirmatively appears that the probative value of such evidence outweighs its prejudicial effect. *State v. Shane, supra,* 304 N.C. at 654, 285 S.E. 2d at 820. Here the State relies primarily on the common plan or scheme exception for the admission of Lee's, Bradford's, and Crittenden's testimony. We are unpersuaded that their testimony fits into any of the exceptions as listed above and first listed in *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). In *State v. McClain* the common plan or scheme exception is explained as follows: "Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission." 240 N.C. at 176, 81 S.E. 2d at 367. In *State v. Barfield, supra,* the court explained the common plan or scheme exception this way: "Evidence of other offenses is admissible if it tends to show the existence of a plan or design to commit the offense charged, or to accomplish a goal of which the offense charged is a part or toward which it is a step." 298 N.C. at 329, 259 S.E. 2d at 529.

When evidence is offered under the common plan or scheme exception it must be

> examined with special care to see that it is really relevant to the establishment of a design or plan rather than merely showing character or a disposition to commit the offense charged. [Citation omitted.] A mere similarity in results is not a sufficient basis upon which to receive evidence of other offenses. Instead, there must be such a concurrence of common features that the assorted offenses are naturally explained as being caused by a general plan.

*State v. Barfield, supra,* 298 N.C. at 329, 259 S.E. 2d at 530. In close cases the defendant must be given the benefit of the doubt and evidence of other crimes or wrongs must be excluded. *State v. Shane, supra.* Here, the testimony (1) concerning defendant's altercation with Lee, some sixteen months prior to the incident with the Parkers, and (2) defendant's altercation with Bradford, some two days before the incident with the Parkers, does not tend to prove a common plan or scheme to commit the offense charged. The testimony does not reveal a concurrence of common features so that the assorted prior bad acts are naturally explained as being caused by a general plan. Rather, at most, the testimony concerning the prior bad acts shows defendant's disposition to commit the offenses charged. Its admission was prejudicial error.

Defendant also assigns as error (1) the trial court allowing the State to amend the warrants to change the name of the defendant from "D. K. Dixon" to "D. K. Dixon, Jr."; and (2) the trial court "refusing to set the verdict aside as being contrary to the evidence and law in the case on the grounds that the jury verdict constituted a merger of the assault and the communicating charge, and a not guilty verdict on the assault charge was in law an acquittal of the communicating charges." We find these assignments of error to be without merit.

It is unnecessary to discuss defendant's remaining assignments of error for it is unlikely such issues will arise upon a

New trial.

Chief Judge HEDRICK and Judge ARNOLD concur.