STATE OF NORTH CAROLINA v. JOHNNIE SPARKS

No. 210A82

(Filed 3 November 1982)

**Criminal Law § 86.5 — impeachment of defendant — prior misconduct — improper questions**

In a prosecution for a first degree sexual offense, the prosecutor erred in asking defendant: "Now isn't it a fact, Mr. Sparks, that during the period of time that you were incarcerated that you became acquainted with the use of anal intercourse as a manner of sexual release for men in prison?" Although the question implies that defendant personally engaged in anal intercourse for his sexual release while in prison, it does not refer to a specific act of misconduct on defendant's part and it fails to state the specific time, place or victim of any alleged misconduct. Further, the prosecutor's argument to the jury that defendant had been exposed to anal intercourse in prison should not have been

made because there was no evidence to support it. The combined errors, the questions and the argument, when taken together, warranted a new trial.

DEFENDANT was found guilty of first degree sex offense before *Judge Lane* and a jury at the 7 December 1981 Criminal Session of GUILFORD Superior Court. He was sentenced to a term of life imprisonment. He appeals pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Special Deputy Attorney General, for the State.*

*Wallace C. Harrelson, Public Defender, and Frederick G. Lind, Assistant Public Defender, for defendant appellant.*

EXUM, Justice.

Defendant contends the trial court committed prejudicial error in refusing to sustain his objections to a question asked him on cross-examination by the prosecutor, and to the prosecutor's argument to the jury based on information in the question even though defendant had answered it negatively. The question asked of defendant was: "Now, isn't it a fact, Mr. Sparks, that during the period of time that you were incarcerated that you became acquainted with the use of anal intercourse as a manner of sexual release for men in prison?" Defendant answered, after his objection was overruled: "No, sir." The prosecutor went on to argue to the jury that defendant had been exposed to acts of consensual anal intercourse in prison. We agree with defendant that this question was an improper attempt to impeach defendant, argument based on the question should not have been permitted, and the combined effect of the question and argument was highly prejudicial. We order, therefore, that defendant receive a new trial.

Dwayne Thomas, defendant's eight-year-old son, was the key witness for the state. He testified that while defendant was living with Dwayne's mother in 1981, defendant had forcible anal intercourse with him. This occurred at least twice while his mother was at work; Dwayne did not tell his mother because he was afraid she might punish him. The last time the anal intercourse allegedly occurred was the day before the family moved to Dwayne's grandmother's house, 25 June 1981.

Subsequently, on a family vacation, Dwayne told his aunt about his father's actions. His aunt, Sonja Jean Simmons, corroborated Dwayne's testimony, and testified that she relayed to Dwayne's mother, her sister, what Dwayne had told her.

Dwayne was examined by a physician on 21 July 1981. The assistant district attorney and defendant's attorney stipulated that the doctor's "examination did not reveal any evidence of anal entry although it is his medical opinion that due to the length of time between the alleged incident and his examination that he could not say whether or not there had been anal entry."

The other witnesses for the state, Dwayne's mother and the investigating detective, essentially corroborated Dwayne's testimony.

Defendant testified in his own defense. He denied ever having anal intercourse with Dwayne. Defendant testified Dwayne knew he was his real father, and they seemed to get along well together.

Defendant admitted he had been convicted of breaking and entering, felonious larceny, and unlawful possession of mail. He served eighteen months in federal prison in Lompoc, California, and had been in the custody of the Berkeley, California, jail and the North Carolina Department of Correction.

In the course of the assistant district attorney's cross-examination of defendant, the following exchanges took place:

Q. Now, on three separate occasions then, it would be your testimony that you have been incarcerated in Berkeley, California, in the North Carolina Department of Correction, and in the federal penitentiary in Lompoc, California, is that correct?

A. Yes, sir.

Q. Now, isn't it a fact, Mr. Sparks, that during the period of time that you were incarcerated that you became acquainted with the use of anal intercourse as a manner of sexual release for men in prison?

MR. LIND: Objection.

THE COURT: Overruled.

State v. Sparks

A. No, sir.

Q. Isn't it a fact—

MR. LIND: Motion to strike and motion for mistrial.

THE COURT: Motion to strike is denied. The objection is overruled.

MR. LIND: Motion for mistrial too, Judge.

THE COURT: Denied.

EXCEPTION NO. 8

In closing arguments, the prosecutor went on to argue as follows:

Now, I argue to you that the defendant served time in prisons in California, in North Carolina, and I argue to you that a form of sexual relief in prison for men—

MR. LIND: Objection to this line of argument.

THE COURT: Overruled.

MR. COMAN: These are acts of consensual anal intercourse and even though it may be—

MR. LIND: Move to strike.

THE COURT: Denied.

MR. COMAN: Even though it may be repugnant to all of us, it is a fact of life.

I argue and I contend to you that during those periods of time he was exposed to that, and I argue and I contend to you—

MR. LIND: Objection.

THE COURT: Overruled.

EXCEPTION NO. 11

MR. COMAN: I argue and I contend to you that when he came to Greensboro in 1980 in December of that year, he had the opportunity to do it with his son and he did it with his son, and I think when you take all the evidence and draw it

together, it certainly points to that as abominable as it may appear to all of us.

Defendant has assigned as error the trial judge's overruling of his objections in each of these instances.

In *State v. Purcell,* 296 N.C. 728, 732, 252 S.E. 2d 772, 775 (1979), the Court summarized this jurisdiction's rules regarding impeachment of a criminal defendant:

> [A] criminal defendant who takes the stand may be cross-examined for purposes of impeachment concerning any prior *specific acts* of criminal and degrading conduct on his part. Such acts need not have resulted in a criminal conviction in order to be appropriate subjects for inquiry. The scope of inquiry about particular acts is, however, within the discretion of the trial judge, and questions concerning them must be asked in good faith. It is not permissible to inquire for purposes of impeachment as to whether a defendant has previously been arrested or indicted for or accused of some unrelated criminal or degrading act.

(Emphasis added.) *See also State v. Shane,* 304 N.C. 643, 285 S.E. 2d 813 (1982); *State v. Mason,* 295 N.C. 584, 248 S.E. 2d 241 (1978), *cert. denied,* 440 U.S. 984 (1979); 1 Brandis on N.C. Evidence §§ 111-12 (2d rev. ed. of Stansbury's N.C. Evidence 1982).

Thus, the first test of the permissibility of a question asked on cross-examination for impeachment purposes is whether it identifies a *specific instance* of criminal or degrading conduct *on the part of the defendant.* This Court has repeatedly held questions that fail to pinpoint a specific act of misconduct by the defendant to be improper. Most recently, in *State v. Shane, supra,* 304 N.C. at 649, 285 S.E. 2d at 817, the following exchange was reviewed:

> Q. You resigned from the intelligence unit because of sexual improprieties, didn't you?
>
> . . .
>
> WITNESS: I resigned from the intelligence police department because a prostitute downtown made allegations against me; and for the betterment of the department and myself, I resigned.

. . .

MR. RAND: In resigning, you told [police officer] Mr. Bill Johnson, did you not, about this incident?

. . .

MR. RAND: You told Mr. Johnson, did you not, about this matter; that you just weren't thinking; that all you were doing was getting a shot of cock, didn't you?

. . .

WITNESS: I did not sir.

This Court held that the prosecutor's query about sexual improprieties failed to identify a specific act of misconduct. The Court stated, 304 N.C. at 651-52, 285 S.E. 2d at 818-19:

A legitimate inference of foul play does not invariably arise from the mere act of resigning from employment. Moreover, the term 'improprieties' is overly broad because an improper act does not necessarily connote a breach of moral or legal mores, and the plural form of the word suggests the commission of several acts without particularizing a single, specific event for the jury to consider in evaluating credibility. *See State v. Purcell, supra; State v. Mason, supra.* Defendant Shane was never asked outright whether he had engaged in an earlier sexual misdeed with a prostitute. Instead, Shane was interrogated about his prior *conversations* with another police officer about the incident and his *knowledge* of the content of the prostitute's allegations. Thus, we conclude that the prosecutor's cross-examination of Shane was not competently tailored to elicit his affirmance or denial of 'some identifiable specific act' by means of a *detailed* reference to 'the time or the place or the victim or any of the circumstances of defendant's alleged prior misconduct.' *State v. Purcell, supra,* 296 N.C. at 732-33, 252 S.E. 2d at 775; *see State v. Herbin,* 298 N.C. 441, 451, 259 S.E. 2d 263, 270 (1979).

In *State v. Purcell, supra,* 296 N.C. at 729-30, 252 S.E. 2d at 773, the prosecutor asked the defendant, over objection, these questions: "You have killed somebody, haven't you, Mr. Purcell?" and, "Well, it was known all around town that you killed

somebody weren't it?" The first question was held to be improper "because it did not inquire about some identifiable specific act on defendant's part." *Id.* at 732, 252 S.E. 2d at 775. The Court stated, *id.* at 733, 252 S.E. 2d at 775:

> The purpose of permitting inquiry into specific acts of criminal or degrading conduct is to allow the jury to consider these acts in weighing the credibility of a witness who has committed them. For this purpose to be fulfilled, the questions put to the witness must enlighten the jury in some degree as to the nature of the witness' act. Questions so loosely phrased as the one here give the jury no clear indication about the witness' credibility.

The second question was held to be improper because it essentially required the "defendant to repeat informal accusations that had been made against him in the community." *Id.* A question so framed had been disapproved in *State v. Williams,* 279 N.C. 663, 675, 185 S.E. 2d 174, 181 (1971), in which the Court emphasized that questions relating to criminal or degrading conduct must "relate to matters *within the knowledge of the witness,* not to accusations of any kind made by others." (Emphasis original.)

In *State v. Mason, supra,* 295 N.C. at 592, 248 S.E. 2d at 247, the defendant assigned error to the trial court's sustaining the prosecutor's objection to a question asked during cross-examination of one of its witnesses. Defense counsel asked the witness, for impeachment purposes "Were you involved in what you call street gang operations in New York?" This Court held the state's objection to be properly sustained because this question did not "concern a *particular act* of misconduct, but rather is a general and oblique allusion to a class of activities." *Id.* at 593, 248 S.E. 2d at 247 (emphasis original).

In light of this precedent, it is clear that the question to which defendant objected in the instant case was improper. The prosecutor asked: "Now isn't it a fact, Mr. Sparks, that during the period of time that you were incarcerated that you became acquainted with the use of anal intercourse as a manner of sexual release for men in prison?" The prosecutor clearly implies that defendant personally engaged in anal intercourse for his sexual release while in prison. But this question does not refer to a specific act of misconduct on defendant's part; it fails to state the

specific time, place or victim of any alleged misconduct. *Compare, State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *rev'd on other grounds,* 432 U.S. 233 (1977) (manner of assault, *i.e.,* shooting, specified); *State v. Black,* 283 N.C. 344, 196 S.E. 2d 225 (1973) (manner of assault and victim's name specified); *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972) (dates and specific criminal activities mentioned).

Indeed, this question is broader than any of those previously condemned by this Court in *State v. Shane, supra, State v. Purcell, supra,* and *State v. Mason, supra.* It does not ask if *defendant* had ever engaged in anal intercourse in prison, or even if he had witnessed such activities between other prisoners. Rather, he was asked whether he became "acquainted with," *i.e.,* gained "knowledge of" or became "familiar with," such activities while in prison. *See* Webster's Third New International Dictionary 18 (1976). This inquiry could in no way give the jury a basis for judging defendant's credibility—the purpose for which impeachment through questions about prior misconduct is permitted. The trial court clearly erred in not sustaining defendant's objection to the question and not allowing his motion to strike.

The prosecutor's argument to the jury that defendant had been exposed to anal intercourse in prison should not have been made because there was no evidence to support it. As stated in *State v. Monk,* 286 N.C. 509, 516, 212 S.E. 2d 125, 131 (1975), G.S. 84-14 permits counsel to "argue to the jury 'the whole case as well of law as of fact.' Even so, argument is not without its limitations. The trial court has a duty, upon objection, to censor remarks not warranted by either the evidence or the law, or remarks calculated to mislead or prejudice the jury. [Citations omitted.]" Furthermore, "counsel may not, by argument or cross-examination, place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Britt,* 288 N.C. 699, 711, 220 S.E. 2d 283, 291 (1975). Defendant's objections to this line of argument by the prosecutor should have been sustained.

We conclude the errors made, when taken together, warrant a new trial. The jury in this case was essentially asked to compare the weight and credibility of Dwayne's testimony with that of defendant's. Although the state put on several witnesses, their

testimony served only to corroborate Dwayne's testimony at trial. The examining physician could not offer an opinion on whether there had been any anal entry of Dwayne. Because the case essentially turned on whether the jury believed Dwayne or defendant, any inferences the jury might have drawn from the prosecutor's improper question and argument weighed heavily against defendant. We conclude that "there is a reasonable possibility" that had these errors not been made "a different result would have been reached" at trial. G.S. 15A-1443. Thus the failure to sustain defendant's objection to the prosecutor's question and argument was reversible error. *See, e.g., State v. Purcell, supra,* 296 N.C. at 734, 252 S.E. 2d at 775-76; *State v. Britt, supra,* 288 N.C. 699, 220 S.E. 2d 283; *State v. Stimpson,* 279 N.C. 716, 185 S.E. 2d 168 (1972).

We do not address defendant's other assignments of error because they are unlikely to arise upon retrial.

New trial.