STATE OF NORTH CAROLINA v. DAVID ALLEN BROOKS

No. 8427SC299

(Filed 15 January 1985)

1. Criminal Law § 66.9— photographic identification—procedure not suggestive
    A pretrial photographic identification of defendant was not impermissibly suggestive where the sheriff's department had a photograph of defendant which was taken ten weeks following the alleged offenses; the photograph was included with three other photographs, all of white males with similar characteristics, but with sufficient differences to permit an identification with a high degree of certainty; the sheriff did not point out any particular aspects of the photographs when they were viewed by the witness; and the witness picked defendant out of the photographic array within five minutes after being shown the photographs.

2. Criminal Law § 66.2— identification at preliminary hearing—no impermissibly suggestive procedure
    An identification of defendant at his preliminary hearing was not impermissibly suggestive where no indication was made to the witness as to which individual was defendant, and the witness identified defendant as one of the perpetrators of the crime.

3. Criminal Law § 86.5— impeachment of defendant—questions improper
    The trial court erred in permitting the prosecutor to cross-examine defendant for impeachment purposes regarding previous attempts by him and his look-alike brother to fool or confuse their victims and other witnesses at trial by dressing and sitting alike in the courtroom, since the questions failed to identify a specific instance of criminal or degrading conduct on the part of defendant; however, such error was not prejudicial, especially in light of the fact that this case was not strictly one of credibility between defendant and the victim.

State v. Brooks

**4. Robbery § 4.7— common law robbery—insufficiency of evidence—fear induced after property taken**

  Evidence was insufficient to be submitted to the jury on a charge of common law robbery, since the fear necessary to sustain a conviction occurred in this case only after the taking of the victim's personal property.

APPEAL by defendant from *Grist, Judge.* Judgment entered 1 April 1983 in Superior Court, LINCOLN County. Heard in the Court of Appeals 7 December 1984.

On 8 November 1982, the Lincoln County grand jury returned proper bills of indictments charging defendant, David Allen Brooks, with armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant's trial began before the jury on 22 March 1983. On 23 March 1983, the trial judge, upon a motion by the defendant declared a mistrial. A new jury was empaneled on 28 March 1983 and found defendant guilty of common law robbery and assault with a deadly weapon inflicting serious injury. Defendant was sentenced to five years on the common law robbery and ten years for the assault charge, with both sentences to run consecutively. From the verdict and sentences, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant.*

JOHNSON, Judge.

In his first assignment of error, defendant asserts that the trial court failed to make adequate findings of fact to resolve conflicts in the evidence which would determine the admissibility of the identification testimony of Marshall Goodson, the victim. Defendant specifically challenges the in-court identification on two grounds: (1) that the pretrial identification from the photographic array was impermissibly suggestive; and (2) that Mr. Goodson's pretrial identification of him at the preliminary hearing on 3 November 1983 was impermissibly suggestive and tainted the victim's in-court identification of the defendant.

[1]  As to defendant's contentions, the trial court ruled that the manner in which the photographic array was displayed and the

conduct on the part of the police officers or the district attorney at the probable cause hearing was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.

> The five factors set forth in *Biggers*, . . . for the assessment of the reliability of identification testimony were intended to apply to those cases where there has been a showing that a pretrial identification procedure, conducted by State officials, is in some manner impermissibly suggestive. *Biggers* mandates that, if there is a showing of an impermissibly suggestive pretrial identification procedure, there must be a determination, in accordance with the factors listed therein, whether the witness's identification of the defendant at trial will be reliable and of an origin independent of the suggestive pretrial procedure. (Citations omitted.) If, however, there is a finding that the pretrial identification procedure was not impermissibly suggestive, then the court's inquiry is at an end, . . . and the credibility of the identification evidence is for the jury to weigh.

*State v. Green*, 296 N.C. 183, 250 S.E. 2d 197 (1978). *See Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972); *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980) (five standards to be used to determine reliability of an out-of-court identification).

The trial court in the case *sub judice* held a *voir dire* hearing outside the presence of the jury. The court found, *inter alia*, that the sheriff's department of Catawba County had a photograph of the defendant which was taken on 19 May 1977, ten weeks following the alleged offenses; that this photograph was included with three other photographs, all the photographs being of white males with long hair, some with chin hair and others with lesser degree of chin hair, including two photographs with minimal chin hair; that the photographs appeared to be reasonably similar in characteristics, but had sufficient differences that an identification could be made of either one of the individuals with a high degree of probability of certainty; that the sheriff of Lincoln County did not point out any particular aspect of the photograph; and that Mr. Goodson picked the defendant out of the photographic array within five minutes after being shown the photographs.

[2] The court further found that there was no suggestiveness made to Mr. Goodson at the probable cause hearing as to which individual was David Allen Brooks, the defendant, even though there was present at the hearing a brother of David Allen Brooks who looks considerably like David Allen Brooks even though a year or two older; that the brother was seated beside Brooks primarily for the purpose of attempting to mislead the State's witness into making a misidentification, but the district attorney, sensing that such was the purpose, removed the brother from the table where he was seated by the defendant so the identification process could be carried out without interference of a look alike; and that during the course of the probable cause hearing Mr. Goodson again identified David Allen Brooks as one of the perpetrators of the crime. These findings are supported by competent evidence, thus are binding on appeal. From these findings, the trial court concluded that the identification of the defendant from the photographic array and at the preliminary hearing was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification and that the credibility of the identification was for the jury to weigh. Upon concluding that the pretrial identification was not impermissibly suggestive the trial court's inquiry was at an end and the identification was properly admitted into evidence. We agree with the trial court and find that defendant's first assignment of error is without merit.

[3] By his second assignment of error, defendant contends that the trial court erred in permitting the prosecutor to cross-examine defendant regarding previous attempts by him and his brother to fool or confuse their victims and other witnesses at trial. The prosecutor asked the following questions of the defendant:

Q. And you and your brothers try to dress just as near alike as you can all the time, don't you?

A. No, sir.

Q. You try to fool victims all the time in court, don't you?

Mr. Black: OBJECTION.

The Court: OVERRULED.

Q. Isn't that the object of your dressing alike and trying to get your hair to look alike and sitting alike in the courtroom and sitting right beside each other?

A. No, sir. We was (sic) sitting beside each other, because both of us was incarcerated.

Q. You wasn't there to try to fool up Mr. Goodson at all?

A. No, sir.

Q. That wasn't the plan of your lawyer and the other lawyer?

A. No, sir.

Q. Why did you object to coming up there beside your lawyer then?

A. Why did I object?

Q. Yes, sir.

A. I didn't. I got up and sat down beside of him.

Defendant contends that this line of questioning was improper impeachment and highly prejudicial. The State contends that this line of questioning was proper impeachment and emphatically contends that the defendant lost the benefit of this objection where the same evidence was admitted later without objection. The State argues that defendant made only one objection throughout this line of questioning, thus not preserving the record for appeal. The State cites *State v. Zimmerman*, 23 N.C. App. 396, 209 S.E. 2d 350, *cert. denied*, 286 N.C. 420, 211 S.E. 2d 800 (1975) as dispositive of this contention. We disagree. We find G.S. 15A-1446 (d)(10) is dispositive of this contention not *Zimmerman*. In *Zimmerman*, the court deemed the objection was lost when the same evidence was admitted on a *number of occasions* throughout the trial, which differs with the case *sub judice* where the sole objection was to a single line of questioning at one instance in the trial. G.S. 15A-1446(d)(10) states: Errors based on any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division.

(10) Subsequent admission of evidence involving a specified line of questioning where there has been an improperly over-

ruled objection to the admission of evidence involving that line of questioning.

The question thus becomes whether this line of questioning was improper impeachment. It is well settled that when a defendant takes the stand he may be cross-examined for purposes of impeachment concerning any prior specific acts of criminal and degrading conduct on his part. *See, State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981).

> [A] criminal defendant who takes the stand may be cross-examined for purposes of impeachment concerning any prior *specific acts* of criminal and degrading conduct on his part. Such acts need not have resulted in a criminal conviction in order to be appropriate subjects for inquiry. The scope of inquiry about particular acts is, however, within the discretion of the trial judge, and questions concerning them must be asked in good faith. It is not permissible to inquire for purposes of impeachment as to whether a defendant has previously been arrested or indicted for or accused of some unrelated criminal or degrading act.

*State v. Sparks*, 307 N.C. 71, 296 S.E. 2d 451 (1982) (quoting *State v. Purcell*, 296 N.C. 728, 732, 252 S.E. 2d 772, 775 (1979) ). Thus, the first test of the permissibility of a question asked on cross-examination for impeachment purposes is whether it identifies a *specific instance* of criminal or degrading conduct *on the part of the defendant*. This Court has repeatedly held questions that fail to pinpoint a specific act of misconduct by the defendant to be improper. *Id.* The questions, in the case *sub judice*, propounded by the prosecutor did not identify a specific act, but were oblique. The questions fail to state the specific time, place or victim of any alleged misconduct and were improperly admitted.

Even if improper impeachment has occurred, an appellate court must find the impeachment to be sufficiently prejudicial so that "had the error in admitting these statements not occurred a different result might have been reached at trial." *See State v. Peplinski*, 290 N.C. 236, 225 S.E. 2d 568, *cert. denied*, 429 U.S. 932, 50 L.Ed. 2d 301, 97 S.Ct. 339 (1976). It is well settled that the scope of cross-examination rests largely in the discretion of the trial court, and his ruling will not be held error unless there is a showing that the jury's verdict was improperly influenced. *State*

*v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972). Taking this evidence with all the evidence properly admitted, we fail to find any prejudice. This case is not strictly a case of credibility between the defendant and the victim. The State introduced evidence from Bobby Ray Smith which linked the defendant to the crime. Mr. Smith testified, *inter alia*, that after his release from federal custody, he engaged in a conversation with the defendant and defendant's brother. Mr. Smith stated,

> The conversation came up, and he (defendant) said, "We robbed a guy one time and he bucked on us, and I had to shoot him in the face." He didn't state who his name was at the time. He said, "I don't think you know him, but he runs the gin in Maiden," and I knew Mr. Goodson—just about all my life, you know, and I knew who it was after that because I'd heard about it before—about him getting shot in the face.

In light of this evidence before the jury and looking at the totality of the circumstances, we hold that the evidence improperly admitted was not prejudicial.

[4] In his final assignment of error, defendant contends that the State failed to present sufficient evidence to sustain a conviction for common law robbery. The defendant was originally charged with armed robbery of a wallet containing $876.00 and checks totaling $1,623.80. At the close of the State's evidence, the trial court properly ruled the evidence insufficient as to the armed robbery offense charged and the case would be submitted to the jury on the question of defendant's guilt of common law robbery.

Common law robbery is the felonious, non-consensual taking and carrying away money or personal property from the person or presence of another by means of violence or fear. *See State v. Smith*, 305 N.C. 691, 292 S.E. 2d 264, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622, 103 S.Ct. 474 (1982). Defendant challenges the sufficiency of the evidence, presented by the State, to sustain a conviction for common law robbery. In considering a motion to dismiss for insufficiency of the evidence, the evidence is to be taken in the light most favorable to the State and the State is entitled to the benefit of every reasonable inference to be drawn therefrom. *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). The State must present substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included

therein, and (b) of defendant's being the perpetrator of the offense. *Id.*

The State presented evidence, *inter alia,* that the defendant and his accomplice entered the victim's home twice on the night of the alleged offense. Upon entering the victim's home the second time, defendant's accomplice grabbed the victim's overalls from a chair near the bed. The defendant was standing near the kitchen door, behind the victim and his accomplice. The evidence further revealed that the accomplice and the victim struggled with the overalls and the wallet fell to the floor. The accomplice proceeded to run from the house with the overalls, but without the wallet. The victim then turned in the direction of the defendant, whereupon he first saw the gun. The victim testified that he froze upon seeing the gun pointed in his face. Defendant then shot the victim and exited the house without the wallet. Taking this evidence in the light most favorable to the State, we fail to find sufficient evidence of the essential element of a taking by force or violence which places the victim in a state of fear or apprehension.

> "Generally, the element of force in the offense of robbery may be actual or constructive. Actual force implies physical force. Under constructive force are included 'all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking . . . No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear.'" (Citations omitted.)

*State v. Hammonds,* 28 N.C. App. 583, 222 S.E. 2d 4 (1976) (quoting *State v. Norris,* 264 N.C. 470, 141 S.E. 2d 869 (1965)).

The evidence the State relies upon to show fear occurred after the "taking." The evidence tends to show that the accomplice grabbed the overalls containing the wallet. It was this action that constituted the taking. The State went on to show that the victim and accomplice then struggled with the overalls

and the wallet fell to the floor where it remained. Only then, after the victim lost in the yanking of the overalls, did he turn in the direction of the defendant and see the gun. The victim, who froze upon seeing the gun, was then shot by the defendant. After shooting the victim, the defendant exited the house without the wallet. This evidence reveals that the "taking" occurred before the victim was placed in fear or an apprehension of fear through the defendant's actions. For these reasons, the defendant's conviction for common law robbery must be reversed.

Affirmed in part; reversed in part.

Judges BECTON and BRASWELL concur.

(Judge BRASWELL concurred in the result reached in this case prior to his retirement on 31 December 1984.)